## JOHN MACKEY v. W. H. WALLACE.

It appears to have been held in some of the States on statutes similar to our own, that the lien created by a judgment does not attach to land purchased by a judgment debtor after the date of the judgment. *Quære.* Does a judgment lien in such case attach under our statutes?

It is doubtful whether a judgment creditor can invoke the equitable powers of the court in a proceeding, seeking to subject the excess of two hundred acres of the homestead of the debtor to the satisfaction of his judgment. If such a proceeding can be maintained, it must be where the creditor can not obtain satisfaction of his judgment in the ordinary way, and it must be in subordination to the right of the debtor to point out property and to possess the homestead of his own selection.

The petition in such a suit failed to aver that the debtor has no other property liable to be taken in execution in satisfaction of the debt, and to allege that an opportunity had been afforded him to point out and designate the excess; held that the petition was insufficient.

ERROR from Colorado. Tried below before the Hon. James H. Bell.

Robert W. Martin filed a petition in the District Court of Colorado county, alleging that, on the 6th day of December, 1856, he obtained a judgment before a justice of the peace of Colorado county for the sum of eighty-nine dollars and thirty-three cents against W. H. Wallace; that the said Wallace has no property subject to execution except a small portion of the tract of land comprising his homestead, which contains 253 acres; that the said amount of 53 acres was levied upon on the ——— day of October, 1857, by virtue of an alias writ of execution, issued by the justice of the peace in favor of petitioner; that it was impossible for petitioner to have the same sold and make title according to law, unless the 53 acres be designated by metes and bounds; prayed that the defendant be compelled to point out 53 acres, being the surplus after deducting the homestead tract, according to quantity and quality and an order of survey be made; or that in case the defendant neglects or refuses to point out the same, then the surveyor be ordered to make the survey, cutting off the homestead into some convenient shape, without injury thereto and setting aside average land to the amount of 53 acres by metes and bounds; and

Mackey v. Wallace.

that the said amount, whether pointed out by defendant or surveyed by the surveyor, be held and made subject to the satisfaction of the judgment hereinbefore mentioned.

The homestead, mentioned in the petition, was purchased by the defendant on the 10th day of May, 1856.

At the Fall Term, 1857, John Mackey, the appellant, with permission of the court, intervened and alleged that he held an unsatisfied judgment against W. H. Wallace for $333 62, rendered on the 6th day of April, 1855, in the District Court of Colorado county; that execution had been regularly issued and *nulla bona* returned; this judgment lien was older than that of Martin; and prayed that the 53 acres be set apart and made subject to the satisfaction of his judgment.

The defendant filed a general demurrer, which the court sustained, and the cause was dismissed. Writ of error prosecuted by John Mackey the intervenor. The plaintiff, Robert W. Martin, did not join in the prosecution of the writ of error.

*Robert L. Foard,* for plaintiff in error.

*John H. Robson,* for defendant in error. In this case there has been no appeal taken or writ of error prosecuted, or assignment of error filed by Martin, the original plaintiff in the suit, and consequently the court can only adjudicate the controversy between the intervenor and the defendant. The basis of the intervention of plaintiff in error as disclosed by his original and amended pleas was the supposed lien which he alleges he acquired in all the lands of defendant in Colorado county by virtue of a judgment recovered against him on the 6th day of April, 1855. The deed for the land sought to be partitioned in this suit, and which is made a part of the amended plea of the intervenor, is dated 10th day of May, 1856, more than 12 months after the rendition of the judgment. It is submitted that the land having been acquired subsequent to the date of the judgment, no lien attached in favor of the judgment creditor.

Art, 1335, Hart. Dig., reads, that "whenever final judgment shall be rendered by any of the courts of record of this Republic,

It shall operate as a lien on all the real estate of the defendant situate and being in the same county where the judgment is rendered from the day of the date of the judgment."

The language of the law clearly presupposes that the land upon which the lien is to attach exists in the county as the property of the judgment debtor at the time of the rendition of the judgment. How is it possible that a judgment can operate as a lien *from the day of its date* upon land which did not at that time belong to the defendant, but which he acquired months, or perhaps years, afterwards? This would involve the absurdity that the judgment was operating as a lien, when in truth there was nothing for it to operate upon.

The law reads further, "that said lien shall cease to operate if execution be not issued out within 12 months from the date of the judgment." Why fix the term of 12 months as the period at which the lien shall terminate, unless the law contemplated that the judgment debtor had real estate to which the lien could attach at the date of the judgment? Again, if the judgment is to *cease to operate* as a lien at the expiration of 12 months, provided execution has not issued, there must have been a time at which it *commenced* to operate as a lien; and when was that period of time? According to the law, at the date of the judgment, and not at the date of the subsequent purchase of land, which clearly presupposes that at the date of the judgment there must be land to which the lien can attach, otherwise it never can have a commencement. Hence we conclude that it was the manifest intention of the law that a judgment should only operate as a lien on such land as was actually owned by the defendant and liable to execution at the date of the judgment. (Calhoun v. Snider, 6 Binn., 135; Styles v. Murphy, 4 Ham., Ohio, 92; 25 Miss., 484; 1 Iowa, Green., 275; 13 Tex. R., 229.)

But, independent of the statute, the view we have taken is the only one which is consistent with the nature and character of a lien. It is the mere incident of a debt, and is created with it. Thus, the mechanic has a lien upon his work for the contract price or value of his labor. As soon as the debt accrues, the lien attaches. There is a privity, so to speak, between the debt and the

subject of the lien; and it seems to me that as well might the tailor claim a lien upon a coat for a pair of breeches which he had previously made, as may the plaintiff in error, in this case, claim a lien, by virtue of a judgment, on a tract of land acquired thirteen months afterwards. We say, then, that the plaintiff in error, having acquired no lien on the land by his judgment, has no standing in court; for it was only by virtue of his alleged lien that his plea of intervention could be maintained.

WHEELER, C. J. It appears to have been held in some of the States, on statutes similar to our own, that the lien created by a judgment does not attach to land purchased by the judgment debtor after the date of the judgment. (Calhoun v. Snider, 6 Binn, 135; 25 Miss., 484; 1 Green, Iowa R., 275.)

But it is unnecessary to decide that question in the present case. If it be conceded that Mackey's judgment was a lien on the land, his petition shows no sufficient ground for asking the interposition of the equity powers of the court in his behalf. If, indeed, such a proceeding as the present can be maintained by a creditor to subject the excess of land in a homestead tract in any case, which is doubtful, it must be where the creditor cannot obtain satisfaction of his judgment in the ordinary way; and it must be in subordination to the right of the debtor to point out property and to possess the homestead of his own selection. It is not averred that the debtor has not other property liable to be taken in execution in satisfaction of the debt. It may be that he has, though executions have been returned *nulla bona*. The averment of such returns is not an allegation that the creditor has not property subject to execution. The returns might be good evidence in support of such an allegation. It was incumbent on the creditor to negative, by averment, the existence of property before he could invoke the equitable powers of the court in an extraordinary proceeding of this nature.

It would seem, moreover, that it is the right of the debtor to designate the land included in his homestead exemption, subject only to the qualification that it must include his improvements. At all events, he has the right to point out property to satisfy the

creditor's execution; and it is not perceived that any one could question his right to point out the excess of land in the homestead tract by designated boundaries, subject to the qualification just mentioned. If he could dispose of it at private sale, and reserve such portion as a homestead as he saw proper, no reason is perceived why he should not have the right to point it out to the agent appointed by the law to sell it for him. It does not appear that any opportunity had been afforded him to point out this excess; and in this respect, also, we think the petition is insufficient.

We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.