Truman O'NEIL, Individually and d/b/a Mesa Mack Sales, Appellant,

v.

MACK TRUCKS, INC. and Mack Financial Corporation, Appellees.

No. 6467.

Court of Civil Appeals of Texas, El Paso.

Dec. 31, 1975.

Rehearing Denied Jan. 21, 1976.

Renner & Snell, Robert B. Snell, Lamesa, Clark, Thomas, Winters & Shapiro, Donald Scott Thomas, Jr., Barry Bishop, Austin, for appellant.

Stubbeman, McRae, Sealy, Laughlin & Browder, Harrell Feldt, David K. Brooks, Midland, for appellees.

## OPINION

WARD, Justice.

Mack Trucks, Inc. and Mack Financial Corporation brought this suit to recover on various debts arising from a manufacturer-dealer relationship between Mack Trucks, Inc. and the Appellant, Truman O'Neil. The Appellant defended by contending that the dealership contract was void as it violated the Texas antitrust laws; that a foreclosure sale of thirteen trucks and the method of crediting the sales proceeds violated the Business and Commercial Code; and that

certain real property was not subject to foreclosure as it constituted the Appellant's business homestead. Trial was to the District Court of Midland County without a jury, and judgment was rendered in favor of Mack Trucks and Mack Financial on all issues. We affirm the judgment except as to that part which awarded a foreclosure of a lien on certain Midland County land claimed by the Appellant as his business homestead.

Three separate causes of action arising from the manufacturer-dealer relationship are involved. First, Appellees sued on a promissory note dated July 10, 1970, in the principal amount of $71,364.10 executed by O'Neil in settlement of various debts then owing to Mack Trucks and Mack Financial. Second, Mack Trucks sued on a sworn account in the amount of $13,746.60 for parts sold and delivered to O'Neil. And third, Mack Financial sued on a series of promissory notes executed by O'Neil pursuant to a dealer's floor plan financial arrangement under which Mack Financial financed thirteen new trucks. These trucks had been repossessed at O'Neil's request and sold, and Mack Financial sued for the deficiency in the amount of $22,516.01. O'Neil did not deny that he had executed the various notes, nor that he had received the parts made the basis of a sworn open account, and agreed that he has not paid any of these obligations. Defenses hereinafter discussed were raised in the trial Court. The trial Court entered judgment in favor of the two Appellees in the principal sum of $107,626.71 together with the sum of $35,239.79 as interest accrued to the date of judgment and attorney's fees in the total amount of $14,349.63.

The Appellant's first point is that the trial Court's implied finding that the claims did not arise from an illegal transaction under the antitrust laws of the State is contrary to the great weight and preponderance of the evidence.

■ No findings of fact nor conclusions of law were requested or filed. "When findings of fact and conclusions of law are not requested or filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence." *Seaman v. Seaman,* 425 S.W.2d 339 (Tex.1968). Also, it will be assumed by the appellate court that every disputed fact issue that was involved in the case was found by the trial Court in such a way as to support the judgment rendered. *Construction and General Labor Union, Local No. 688 v. Stephenson,* 148 Tex. 434, 225 S.W.2d 958 (1950); 4 McDonald, Texas Civil Practice, Presumptions on Appeal § 16.10 at 30.

■ Because of the "great weight" point, the whole trial record has been considered and weighed. O'Neil sold Mack Trucks in Texas for twenty-one years and operated under a written distributorship contract. The territory assigned to him was defined as being the area of the "Distributor's Primary Sales and Service Responsibility." This was defined to be that he use his "best efforts actively and vigorously to sell Mack Products, and to promote and develop energetically the potentiality for the sale of Mack Products within the Territory." There was no provision in the contract that granted any exclusive sales rights in the territory nor restricted O'Neil from selling outside that area.

■ A contract by which a distributor obtains an exclusive territory for the resale of articles purchased from a supplier, and by which the distributor is given a contractual right to prevent sales by the supplier to others in that territory, violates the antitrust laws of Texas and is unenforceable in the courts. *Sherrard v. After Hours, Inc.,* 464 S.W.2d 87 (Tex.1971). Though there was no competing distributor of Mack Products assigned to the same territory, there was no contract commitment which established that exclusive right. A manufacturer may legally choose to place one distributor in a particular area. *Ford Motor Co. v. State,* 142 Tex. 5, 175 S.W.2d 230 (1943). The written contract did not violate antitrust law.

The Appellant contends in this regard that in spite of the written terms, there was an understanding and course of dealing between the parties which established the exclusive dealership and territorial restriction. O'Neil's area was reduced on two occasions over the years, and Mack secured releases of those areas from O'Neil on both occasions. From this, and from other practices, the Appellant interpreted his contract as restricting his sales area and likewise as showing that it was exclusively his own.

Appellees introduced evidence all contrary to the position of the Appellant. It was shown that Mack and other Mack dealers frequently made direct sales into the territory in competition with O'Neil and that all dealers, including O'Neil, regularly sold outside of their own territories. The designated areas of prime responsibility were assigned only to assure adequate coverage in those given areas without being of any binding effect. The implied findings were supported by ample evidence that no exclusive territories had been assigned or created. The first point is overruled.

The Appellant complains of the implied finding of the Court regarding the legality of the foreclosure sale of the thirteen trucks. The point is that the implied finding of the trial Court that the sales of the collateral were commercially reasonable was contrary to the great weight and preponderance of the evidence. In 1970, Mack Financial, at O'Neil's request and under the terms of its trust receipts, took possession of the thirteen vehicles and disposed of them by private sale to Mack Trucks. No written notice of the proposed sale was given to the Appellant. On the notes involved, the Appellant was credited with $216,137.00 on the repossession. In the present suit, the trial Court allowed a recovery of $22,516.01 as the deficiency remaining on the notes and trust receipts after the foreclosure sale. O'Neil's argument is that the evidence showed that Mack Financial's disposition of the collateral was unreasonable under the Uniform Commercial Code as no notice was given of the sale and the sales price was unreasonably low. Section 9.504(c) Tex.Bus. & Comm. Code Ann.

■ Appellees contend that reasonable notification of the sale was not required because the Mack trucks were of "a type customarily sold on a recognized market" and were within the exceptions set out in Section 9.504(c). This argument is not accepted as the term "recognized market" within the meaning of the U.C.C. is most restrictive. Cases which have considered "used cars" are authority for this ruling. "Thus a 'recognized market' might well be a stock market or a commodity market, where sales involve many items so similar that individual differences are nonexistent or immaterial, where haggling and competitive bidding are not primary factors in each sale, and where the prices paid in actual sales of comparable property are currently available by quotation." *Norton v. National Bank of Commerce of Pine Bluff*, 240 Ark. 143, 398 S.W.2d 538 (1966); *Alliance Discount Corp. v. Shaw*, 195 Pa.Super. 601, 171 A.2d 548 (1961); *Nelson v. Monarch Investment Plan*, 452 S.W.2d 375, 377 (Ky. Appeals 1970).

■ Appellees next contend that O'Neil waived his right to any notice of the private sale because of his request that Mack Financial repossess the trucks and stop the interest accruing on his notes. While O'Neil might not have wanted to participate in the bidding, he might well have been interested in securing other buyers. There is no showing to the contrary. The argument on waiver is rejected. Under Sections 9.501(c) and 9.504(c) as now written, the problem may not present itself again as waiver will be permitted only if the debtor signs a statement after default renouncing or modifying his right to notification of sale. Reasonable notification should have been given to the debtor of the intended sale of the collateral.

■ As to the penalty which results when the creditor fails to comply with the

repossession and resale requirements, such as the failure to give the required notice, a conflict of authority has developed. One line of cases is to the effect that failure to comply with the notice and other requirements of the Code prohibits the secured party from obtaining any deficiency judgment. The other major line of authority holds that failure to comply does not act as a bar to the recovery of a deficiency judgment, but creates a rebuttable presumption that the value of the collateral equals the amount of the debt, and places the burden of proving fair market value of the sale on the secured party prior to permitting any recovery of a deficiency. *United States v. Whitehouse Plastics*, 501 F.2d 692 (5th Cir. 1974). After considering the cases, the Fifth Circuit held in that case arising from Texas that absence of compliance with the notice requirement would not act as a bar to recovery of any deficiency but created at most a rebuttable presumption that the value of the collateral equaled the amount of the debt and placed on the secured party the burden of proving that the fair market value of the goods sold was less than the amount of the debt. This holding is adopted by this Court.

■ The evidence is next examined to determine if the creditors discharged their burden to rebut the presumption. The evidence shows that O'Neil voluntarily purchased the trucks nine months earlier from Mack Trucks for exactly the same amount as the sales price under examination; that the trucks were then driven from Allentown, Pennsylvania, to Midland, Texas, and were there unsuccessfully displayed for several months by O'Neil for the purpose of resale. The market for new trucks at the time of the repossession was slow and all dealers were overstocked due to fallen economic conditions. After the resale by Mack Financial to Mack Trucks, Mack Trucks itself resold the trucks for a total price of $217,926.83 or only $1,789.83 in excess of the price paid to Mack Financial. These sales were made directly to Mack customers through Mack's own sales outlets in the ordinary course of business. These last arms-length transactions were not questioned and indicate a reasonable value of the trucks. The presumed finding that the questioned bulk sales price of $216,137.00 was not unreasonably low was justified when compared to the retail sales to individual customers at $217,926.83. The trial Court simply rejected O'Neil's testimony to the contrary. Appellant's point is overruled.

■ The final points complain of the action of the trial Court in permitting a foreclosure of a deed of trust lien on a 4.09 acre tract of land in Midland County. In 1970, O'Neil executed a promissory note in the amount of $71,364.10 payable to Appellees, and to secure the note, he gave the deed of trust covering the property in Midland County as well as lots in Lamesa, Texas. One of the defenses offered by O'Neil was that the 4.09 acres constituted his business homestead. The testimony was that he had purchased a 116 acre tract for $75,000.00 in 1965, and the 4.09 acres was then fenced in, paved and a building erected thereon where he thereafter conducted his truck business. O'Neil had been married since 1939, and the business was operated as a sole proprietorship. While there is some evidence that he owned a farm and had certain other interests, a fair review of the evidence is to the effect that O'Neil was a Mack distributor and operated this distributorship on the property in question as his calling or business since 1965. In 1968, he purchased a residence for his family in Midland and thereafter occupied it as his residential homestead. The Appellees' only real attempt to dispute the issue as to the property being business homestead was their evidence to the effect that the tract was not designated as a homestead with the Assessor-Collector of Midland although the Appellant's residence was so designated after 1968. Tex.Const. art. VIII, §§ 1–a, 1–b, provide only for the tax exemption for "residence homestead." This designation for the tax exemption does not determine the

business homestead. The urban homestead embraces not only the residence of the family, but also the lot or lots where the head of the family exercises his calling or business. The business homestead is a part of the urban homestead. *Purdy v. Grove*, 35 S.W.2d 1078 (Tex.Civ.App.—Eastland 1931, writ ref'd); 28 Tex.Jur.2d Homesteads § 34 at 411, and following sections. To preserve the place of business, which is separate and distinct from the home, it is only necessary that the head of the family have a calling or business to which the property is adopted and reasonably necessary, and such property must be used as a place to exercise that calling. *Mays v. Mays*, 43 S.W.2d 148 (Tex. Civ.App.—Beaumont 1931, writ ref'd). Under the evidence before the trial Court, the property in question was the business homestead and protected by Tex.Const. art. XVI, § 51.

It is suggested by the Appellees that due to increase in land values, that when O'Neil designated his residence homestead in 1968, that the values involved had probably increased substantially and beyond the then existing limitation. Being excessive doesn't destroy the designation. 28 Tex.Jur.2d Homesteads § 27 at 401. Excessiveness was a matter for the creditors to allege and prove before it could be applied to satisfy the deed of trust lien. 28 Tex. Jur.2d Homesteads § 29 at 403. However, the matter of excessive valuation was not shown by the evidence. In addition, the protection afforded to the family by the homestead exemption is also a protection against subsequent inflation. *Swayne v. Chase*, 88 Tex. 218, 30 S.W. 1049 (1895); Tex.Const. art. XVI, § 51 Comment. If at the time of the designation as homestead, the lot or lots were worth $5,000.00 or less, the lot or lots remained exempt no matter how much the value might increase. *Lake v. Boulware*, 12 Tex.Civ.App. 660, 35 S.W. 24 (Fort Worth 1896, writ ref'd). If at the time of the designation the lot or lots were worth more than the $5,000.00, the exemption covered an undivided interest in the property, and if the value later increased,

the exemption on the undivided interest increased proportionately. *Hoffman v. Love*, 494 S.W.2d 591 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e), 499 S.W.2d 295 (Tex.1973). If at the time of the residence designation by O'Neil the values of the properties exceeded the amount of the exemption, there would be another matter to consider. It has been suggested that the value limitation should be alloted to the residence homestead first. McSwain, The Texas Business Homestead, 15 Baylor L.Rev. 39 at 53. The effect, if any, of the increased amount of the exemption under Amended Article XVI, § 51, is not considered at this time.

The first point presented by Appellant regarding the homestead is that there is no evidence to support the implied finding that the tract of land was not business homestead. This was an issue upon which the Appellant had the burden of proof and it has been held that such a "no evidence" point fails to invoke any authority for appellate review. *Prunty v. Post Oak Bank*, 493 S.W.2d 645 (Tex.Civ.App.—Houston 1973, writ ref'd n. r. e.). This holding is forceful here as the case was tried without a jury and the point cannot be based or related to a particular procedural step in the trial process to aid in the determination of the meaning of the improperly worded point. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361, 362. In view of this, jurisdiction to entertain the point is denied.

The companion point on the homestead attacks the implied negative finding by stating it is contrary to the great weight and preponderance of the evidence. The point is correctly phrased, invokes appellate jurisdiction, and requires a full review of all of the evidence. The implied finding of the trial court is manifestly unjust and the factual point is sustained.

All points have been considered and overruled with the exception of the last one which is sustained. The judgment of the

trial Court granting to Appellees the foreclosure of their lien on that 4.09 acres of land in Midland County, Texas, by virtue of the deed of trust given by O'Neil and dated July 10, 1970, and which judgment provides for order of sale to issue on that property is reversed, and that issue is severed, and as to it the cause is remanded to the trial Court for retrial. The judgment of the trial Court is otherwise affirmed.