In re Freddy G. STARNS, Debtor.

Bankruptcy No. 85–00598–H2–4.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 19, 1985.

Samuel T. Kinslow, Smith & Bratcher, Inc., Waco, Tex., for debtor.

Patrick L. Hughes, Sheinfeld, Maley & Kay, Houston, Tex., for Freedman Packing, Inc.

## MEMORANDUM OPINION AND ORDER

RANDALL, Circuit Judge: *

Because the debtor does not object to the lifting of the automatic stay as to any of his nonexempt property, the primary issue in this case is whether the debtor has nonexempt property to which the movant's judgment lien attaches. At least a portion of the property against which the movant seeks relief is not exempt. Therefore, the stay is lifted to permit the movant to foreclose its judgment lien in state court against the debtor's nonexempt property. In the state forum the parties will have an opportunity to litigate an unresolved question of state law concerning the determination of excess acreage of the urban homestead after recent amendments to Texas' homestead provisions.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 1982, Freedman Packing, Inc. ("Freedman"), a meat-packing corporation doing business in Houston, Texas, sold meat to Freddy G. Starns ("Debtor") for resale to other customers. The Debtor owns and is employed by Madisonville Processing, a custom slaughterhouse which is unincorporated. Freedman instituted a lawsuit against the Debtor in state court to collect the amount due. In this action, styled and numbered *Freedman Packing, Inc. v. Starns,* Cause No. 82–57112, in the District Court of Harris County, Texas,

164th Judicial District, Freedman obtained on October 11, 1983, a summary judgment in the total amount of $113,753.35, plus post-judgment interest and costs. On November 2, 1983, Freedman filed an abstract of judgment in the Real Property Records of Madison County, Texas.

On February 1, 1985, the Debtor filed a Chapter 7 petition in the United States Bankruptcy Court for the Southern District of Texas. With the petition, the Debtor filed his schedules and statement of financial affairs. At issue are two tracts of real property that the Debtor scheduled as exempt. One tract, claimed to be exempt as residential homestead ("Tract 1"), is comprised of 2.26 acres and lies within a residential area in the town of Midway, Texas. The Debtor valued Tract 1 at $85,000 in his schedules. He testified at the hearing that this tract was worth $10,000 or less when he purchased it, some time before 1980. The other tract of real property, which is claimed to be exempt as business homestead ("Tract 2"), is comprised of 0.78 acres and is located on State Highway 21 also within the town of Midway. On Tract 2, there is situated a building which fronts the highway and is adjoined by buildings on either side. The Debtor uses the building on Tract 2 to store boxes and bags. He visits the building two or more times a week to pick up boxes for use in his business activities at premises he leases in Madisonville, Texas, a town located eleven miles from Midway. The building is equipped with telephone service. The Debtor scheduled Tract 2 at a value of $30,000. Tracts 1 and 2 (also referred to as the "Property") are the only scheduled pieces of real property of the Debtor located in Madison County, Texas. Each of the tracts is encumbered. Securing an indebtedness of the Debtor to the Farmers State Bank of Madisonville, Texas ("Bank"), in

---

* Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation. Pursuant to section 104(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 104(a), 98 Stat. 341 (to be codified at 28 U.S.C. § 157(d)), an order was entered in the United States District Court for the Southern District of Texas withdrawing the reference in this case—then pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division—for the limited purpose of permitting the district court to enter this order.

the total amount of $65,227.21, the Bank holds a first lien on Tract 1 and a subordinated lien on Tract 2. Tract 2 is also encumbered by a first lien to the Thompson Estate for $3,500. Freedman's judgment lien, which arose when Freedman filed the abstract of the state-court judgment, is later in time to the other liens on Tracts 1 and 2. The Bank also has a lien on two registered quarterhorses owned by the Debtor and, securing a separate $17,000 loan to the Debtor, a lien upon a seventeen-acre tract owned by the Debtor's father.

On February 26, 1985, Freedman filed a proof of claim alleging that its claim was secured to the extent of the value of the property subject to the judgment lien. The Debtor had scheduled as unsecured a $104,-499.35 claim to Freedman—a sum representing the principal amount due on the September 1982 transaction.

On March 4, 1985, Freedman filed a Motion for Relief from Stay of Act Against Property ("Motion") seeking modification of the automatic stay to institute foreclosure and execution proceedings against nonexempt real property subject to its judgment lien—that is, Tracts 1 and 2. In the Motion, Freedman disputed (1) the Debtor's characterization of its claim as unsecured and (2) "certain of the [Debtor's] claims for exempt property." On March 29, 1985, the Debtor answered the Motion, asserting that such relief should be denied since the Property is exempt.

The parties agreed to pass the March 29, 1985 preliminary hearing on the Motion to a final hearing set for April 29 and then reset for May 6, 1985. The Motion was again reset and heard on May 29, 1985. In the meantime, on April 1, 1985, the section 341 meeting of creditors[1] was conducted by the trustee and actively participated in by Freedman.

Following the May 29 hearing, the Motion was taken under advisement and the parties directed to file post-trial briefs. After receiving and considering these briefs in July, the court noted several concerns that required supplemental briefing. Letter briefs addressing these concerns were filed on or before August 1, 1985.

Freedman contends that it has a judgment lien upon all nonexempt real property owned by the Debtor in Madison County, Texas.[2] It disputes the Debtor's characterization of the two tracts as exempt. Freedman asserts that Tract 2 does not qualify for the business homestead exemption. It further maintains that, while a designated one-acre portion of Tract 1 does qualify for the residential exemption under Texas law, the excess is nonexempt and subject to the judgment lien.

With regard to the motion for relief from stay, Freedman contends that the stay should be modified to allow foreclosure because cause exists to lift the stay under section 362(d)(1).[3] Freedman argues that the Debtor cannot adequately protect Freedman's subordinated secured position in the nonexempt property because the judgment lien attaching to such property may be eliminated if prior lienholders elect to foreclose their interests. In addition, citing *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984), and *In re Bear Creek Ministorage, Inc.,* 49 B.R. 454 (Bankr.S.D.Tex.1985), Freedman suggests that the Debtor's failure to make periodic payments reflects a further lack of ade-

---

**1.** 11 U.S.C. § 341.

**2.** Under Texas law, a judgment lien does not attach to a then existing homestead. *See, e.g., Hoffman v. Love,* 494 S.W.2d 591, 593–94 (Tex. Civ.App.—Dallas), *writ ref'd n.r.e.,* 499 S.W.2d 295 (Tex.1973); *Glasscock v. Stringer,* 33 S.W. 677 (Tex.Civ.App.1896, writ ref'd); Olds, *Judgment Liens in Texas,* 5 Hous.L.Rev. 664, 670 (1968); 28 Tex.Jur.2d *Homesteads* § 158 (1961 & Supp.1984).

**3.** Section 362(d)(1) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property under subsection (a) of this section of such party in interest....

11 U.S.C. § 362(d)(1).

quate protection. Freedman also asserts that cause exists to lift the stay because the Debtor filed his petition in bankruptcy solely to escape his liability to Freedman.

As a separate ground for relief from the stay, under section 362(d)(2),[4] Freedman contends that the Debtor lacks equity in the property and that such property is not necessary for an effective reorganization. Finally, Freedman asserts that the Debtor has simply failed to satisfy his burden of proof under section 362(g) that the stay should continue since he argues only that the judgment lien does not attach to his exempt property.

At trial, Freedman requested the court to marshal the assets, or more properly the collateral, of the Bank in order to permit Freedman to execute against Tract 2 relegating the Bank to seek recourse for its interests against Tract 1, the Debtor's two registered quarterhorses, and the parcel of land pledged by the Debtor's father.

The Debtor responds by asserting that he has no objection to lifting the stay as to his nonexempt property. He does maintain, however, that Freedman's failure to object to the exemptions as scheduled by the Debtor within the thirty days following the April 1 section 341 creditors' meeting constituted a waiver of such objections and, consequently, the Property is deemed exempt as scheduled. Although recognizing that Freedman asserted in its motion for relief from stay, filed nearly a month before the first creditors' meeting, that it disputed "certain of the [Debtor's] claims for exempt property," the Debtor contends that "such a side comment is insufficient to be considered an Objection to Exemptions Claimed." Further, the Debtor suggests that the general, all-inclusive statement in

Freedman's Motion is too broad and failed to place the Debtor on notice as to which exemptions Freedman disputed.

The Debtor argues that he makes business use of the building located on Tract 2, using it as a warehouse which is serviced by telephone and from which he obtains boxes several times a week. Consequently, the Debtor concludes, Tract 2 qualifies as a business homestead. With respect to the urban homestead claim as a whole,[5] the Debtor asserts that Freedman presented insufficient evidence at trial to provide the court a basis for delimiting a one-acre portion of the Property as exempt property. The Debtor also maintains that the retroactive application of the 1983 amendments of the provisions of the Texas Constitution[6] and the Texas Property Code[7] regarding the homestead exemption violates his right to due process and the prohibition against ex post facto laws.

The Debtor contends that the stay should not be lifted because (1) the Debtor does have equity in the property since the judgment lien does not attach to exempt property and the two tracts are deemed exempt, and (2) Freedman's interests are adequately protected since the tracts constitute real property that is not declining in value. The Debtor rejects as untenable the notion that Freedman's inferior lien position can be said to constitute a lack of adequate protection. Finally, the Debtor argues that Tract 2 is necessary for an effective reorganization because he may be required to abandon the leased premises and operate wholly from the Tract 2 premises.

The Debtor contends that, because Freedman requested the extraordinary relief of marshaling for the first time at trial

---

4. Section 362(d)(2) provides that a court, on request of a party in interest and after notice and a hearing, shall grant relief from the stay "with respect to a stay of an act against property, if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."

5. The business homestead is a part of the urban homestead. *O'Neil v. Mack Trucks, Inc.,* 533 S.W.2d 832, 838 (Tex.Civ.App.—El Paso 1975), *rev'd,* 542 S.W.2d 112 (Tex.1976), *recalled,* 551

S.W.2d 32 (Tex.1977); *Purdy v. Grove,* 35 S.W.2d 1078 (Tex.Civ.App.—Eastland 1931, writ ref'd); 28 Tex.Jur.2d *Homesteads* § 34 (1961 & Supp.1984).

6. Tex. Const. art. XVI, § 51. The new amendment was approved on November 8, 1983, and became law on November 30, 1983.

7. Tex.Prop.Code Ann. § 41.001 (Vernon 1984).

and consequently failed to place other interested parties (like the Bank) on notice that such relief would be sought at the hearing on the motion for relief from stay, such relief should be denied. Further, the Debtor argues that marshaling is nevertheless an inappropriate remedy in this case and that Freedman presented insufficient evidence to provide the court with a basis to undertake a marshaling of assets.

In response to the court's request, the parties addressed the issue whether the presence of novel and unresolved questions of state law made this an appropriate case for abstention under 28 U.S.C. § 1334. The Debtor indicated that the stay should be lifted to permit the exemption issue to be determined by a state court. Freedman urged the court not to abstain because (1) the issues raised in the case are within the contemplation of core issues set forth in section 157 of Title 28, (2) the marshaling issue affects administration of the Debtor's bankruptcy case since it involves a determination of the validity, extent, or priority of liens, and (3) the issue of marshaling affects the adjustment of debtor-creditor relationships. Instead, Freedman urges that the stay be lifted pending its filing of a "Motion for Marshaling Collateral."

The issues raised by the parties will be addressed in turn.

## II.

## DISCUSSION

A. *Objection to Exemptions*

■ The threshold issue in the case at bar is whether Freedman's failure to file an objection within thirty days after the first creditors' meeting constituted a waiver of its right to object to the exemptions as scheduled by the Debtor. After all, if Tracts 1 and 2 are deemed exempt by Freedman's failure to object, Freedman's motion for relief from stay is of no force since a judgment lien does not attach to exempt property.[8]

8. *See supra* note 2.

Section 522(*l*) of the Bankruptcy Code provides:

> The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. *Unless a party in interest objects, the property claimed as exempt on such list is exempt.*

11 U.S.C. § 522(*l*) (emphasis added). Bankruptcy Rule 4003 provides that a debtor shall make his section 522 claims of exemption known by listing the property claimed as exempt on the required schedule of assets, particularly Schedule B–4. *See* Bankr.R. 4003(a); *see also* Bankr.R. 1007(b); Bankr.Form No. 6. The rule outlines the manner of objecting to claims of exemptions:

> The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list unless, within such period, further time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and his attorney.

Bankr.R. 4003(b). The objecting party has the burden of proving that the exemptions are not properly claimed. Bankr.R. 4003(c). The issues raised by the objections are usually heard and determined by the bankruptcy court after notice that the court will consider the objections. *Id.; see, e.g., In re Blum,* 39 B.R. 897 (Bankr.S.D. Fla.1984); *cf.* Bankr.S.D.Tex.R. 4003(c) (after notice clerk shall set for a pre-trial hearing any objection to amended or supplemented list of exemptions claimed).

The legislative history of section 522(*l*) provides only that "[s]ubsection (1) requires the debtor to file a list of property that he claims as exempt from property of the estate. Absent an objection to the list,

the property is exempted. A dependent of the debtor may file it and thus be protected if the debtor fails to file the list." H.R. Rep. No. 595, 95th Cong., 1st Sess. 363 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6319; *see also* S.Rep. No. 989, 95th Cong., 2d Sess. 77, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5863.

It is clear that the purpose of section 522(*l*) and Bankruptcy Rule 4003 is to protect the rights of a debtor by requiring a prompt determination of the right to exemptions. *See In re Allen*, 44 B.R. 38, 40 (Bankr.D.N.M.1984). One court has observed:

> Clearly the purpose of the time limits under ... Bankruptcy Rule 4003 is to encourage early determination of exemption questions so all parties may then freely pursue their rights with regard to the exempt property. The rule also establishes a notice procedure to alert the debtors that the property claimed exempt cannot be so treated until the controversy surrounding its status is resolved.

*In re Earnest*, 42 B.R. 395, 401 (Bankr.D. Ore.1984).

Within a year of receiving the proceeds from the sales of their homes, the debtors in separate cases consolidated in *Earnest* filed Chapter 7 petitions in bankruptcy, claiming in their B–4 schedules a portion of the proceeds as exempt under state law. Shortly after the filings, the trustees in both cases notified the debtors of their continuing interest in the sales proceeds, but neither filed a formal objection to the debtors' scheduled exemptions at that time. In one of the consolidated cases, the trustee filed a formal objection to the claimed exemption one year after the debtor received the sale proceeds. In the other case, the debtor requested the court to determine the exemption issue after the trustee obtained orders extending the time for entry of the debtor's discharge until resolution of the legal issue.

The particular problem in *Earnest* was that the trustees failed to comply with a local rule's time limits for objecting to claimed exemptions because the trustees believed they were not in a position to formally object to the claimed exemptions for lack of proof. The *Earnest* court noted that Rule 4003, which was not in effect when the trustees made their decisions not to file objections, now provides that a court may grant additional time to object in recognition that circumstances might preclude a party in interest from objecting within the initial period and that a party must have time to object to any amendments of the exemptions filed by the debtor after the initial period.

Although the problem in *Earnest* differs in material respects from the problem raised in the instant proceeding, that court's rationale is instructive. The *Earnest* court allowed the trustees' objections to the claimed exemptions, reasoning that the debtors received actual notice from the trustees early in the proceedings that the trustees questioned the status of the exemptions. Further, the court observed that the trustees' failure to abide by the local rule did not prejudice the debtors, noting that "the steps the trustees did take were sufficient to bring the issue before the court in a timely manner with sufficient notice to interested parties and met the intent of the rule." *Id.*

In the case at bar, the Debtor argues that the express dictates of Rule 4003 require that any objections to his scheduled exemptions should have been filed in the thirty days following the section 341 meeting of creditors held on April 1, 1985—that is, in the period between April 1 and May 1, 1985. Since Freedman failed to file a formal objection within this time period the Debtor argues that the Property should be deemed exempt as scheduled. The argument amounts to reading Rule 4003 as a technical pleading requirement in view of the fact that in the motion for relief from stay filed on March 4, 1985, or twenty-seven days *before* the section 341 meeting of creditors, Freedman made clear that it disputed the Debtor's claims that Tracts 1 and

2 constitute exempt property.[9] The Debtor answered Freedman's Motion by reasserting that all his real property situated in Madison County was exempt. Freedman's alleged failings, then, are that it made known its objection to the scheduled exemptions too soon and that it objected through the vehicle of a motion for relief from stay rather than a pleading denominated "Objection to Exemptions."

But, as in *Earnest*, the Debtor received actual notice from Freedman early in the proceeding that the scheduled exemptions were disputed. Moreover, the Debtor does not argue that he has been prejudiced by Freedman's failure to reassert its objection after the section 341 meeting was held.[10] Certainly the steps taken by Freedman were sufficient to bring the issue before the court in a timely manner with sufficient notice to interested parties. And certainly these steps satisfied the intent of Rule 4003 that exemption questions be resolved early in bankruptcy proceedings.

The proper procedure, of course, is to file an objection to the claim of exemptions within the time limit established in Rule 4003(b) to ensure that it is properly docketed by the clerk of court and brought on for hearing before the bankruptcy court. Nevertheless, although Freedman did not comply with the letter of this procedure, this court is satisfied that its filing did meet the concerns underlying the rule. *See In re Grosslight*, 757 F.2d 773, 777 (6th Cir.1985) (treating adversary proceeding in which creditor sought relief from automatic stay to proceed with case in state court as an objection to the debtor's claim of exemptions). In like manner, a complaint seeking termination of the automatic stay has been held to constitute a proof of claim, which is required by Bankruptcy Rule 3002 to be filed within ninety days after the first date set for the section 341 meeting, when the complaint sets forth the essential requisites of a formal proof of claim. *See In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1380–82 (9th Cir.1985); *In re Guardian Mortgage Investors*, 15 B.R. 284 (M.D.Fla.1981); *In re Hart Ski Mfg. Co.*, 5 B.R. 326 (Bankr.D.Minn.1980). Accordingly, this court holds that the exemption issue was raised timely by Freedman's motion for relief from stay which specified that the Debtor's exemptions were disputed. The Motion therefore operated as an objection to the claim of exemptions.

### B. *Motion for Relief from Stay*

Freedman seeks modification of the automatic stay to permit it to foreclose its judgment lien attaching to the nonexempt property of the Debtor located in Madison County, Texas. Tracts 1 and 2 are the only items of real property within the county owned by the Debtor. Because the judgment lien does not attach to exempt property,[11] the Debtor's claim that Tracts 1 and 2 are exempt under Texas law is critical to a determination of whether the stay should be modified. This is further highlighted by the Debtor's declaration that he has no objection to the lifting of the stay as to his nonexempt property. In view of this declaration, there is no need to review the various requisites for relief under the two subsections of section 362(d). The Debtor's opposition to modification of the automatic stay revolves solely around his contention that Tracts 1 and 2 are exempt property and free of Freedman's judgment lien. Ac-

---

**9.** Although the motion recited only that "Freedman disputes certain of the claims of exempt property," there can be little doubt that Freedman's dispute concerned Tracts 1 and 2—the property regarding which relief from the stay was sought.

**10.** The Debtor does suggest that Freedman's attempt to object to the claimed exemptions by means of a motion for relief from stay represents an attempt to obtain more expedited relief than is otherwise provided by the Bankruptcy Code and the Bankruptcy Rules. The Debtor notes that, due to this court's heavy docket, an objection to exemptions would have come on for hearing well after a motion for relief from stay, which requires prompt action under the Code. Even reading the Debtor's contention broadly as asserting prejudice, this court fails to discern how an expedited determination of the exemption issue would adversely affect the Debtor's interests.

**11.** *See supra* note 2.

cordingly, the stay is lifted as to any non-exempt property of the Debtor located in Madison County to permit Freedman to foreclose its judgment lien. The sole remaining issue, then, is whether Tracts 1 and 2 are exempt under Texas homestead law.

### C. Urban Homestead Exemption

#### 1. Tract 1: Residential Homestead

■ Texas law was amended in 1983 to permit Texas residents to exempt from forced sale by creditors up to one acre of land, together with all improvements thereon, as their urban homestead regardless of when the homestead was acquired. Tex. Const. art. XVI, § 51; Tex.Prop.Code Ann. § 41.001 (Vernon 1984). Before the 1983 amendments, homeowners were entitled to exempt up to $5,000 of the value of such property together with improvements thereon as their urban homestead if the property was acquired before 1971, and up to $10,000 in value if the property was acquired after 1971. Section 41.001(c) of the Texas Property Code, however, provides for retroactive application of the one-acre homestead exemption to all homesteads in Texas whatever the date of the homestead designation.

Freedman argues that, viewing Tract 1 alone, the amount of the 2.26 acres in ex-

cess of the one-acre homestead exemption is not exempt and therefore is subject to the judgment lien. The Debtor answers in part that Freedman failed to produce evidence that would permit the court to designate which acre is to constitute the urban homestead. Although designation of the homestead is an issue that must be addressed by the state court before allowing foreclosure,[12] it need not be resolved by this court to determine that some portion of the Property claimed as exempt is in fact nonexempt.[13] Certainly, under the 1983 amendments, no more than one acre can be exempt under Texas law as urban homestead.

The Debtor also attacks the constitutionality of the 1983 amendments. The Debtor contends that at the time he purchased Tract 1, at some time prior to 1980, the value of the property was $10,000 or less.[14] Accordingly, Texas law would have permitted the entire amount of the property, together with all improvements thereon, to be exempt. The Debtor concludes without further elaboration or citation of authority that to effect a retroactive application of the 1983 amendments of the Texas homestead law would violate due process and the prohibition against ex post facto laws.

■ If there is an issue of constitutional law here it is very dim by reason of the

---

**12.** Cf. Steenland v. Texas Commerce Bank Nat'l Ass'n, 648 S.W.2d 387, 390 (Tex.App.—Tyler 1983, writ ref'd n.r.e.) ("[T]he Bank must secure a determination of excess value by alleging and proving same in a separate suit such as a suit to foreclose its judgment lien."). Steenland involved a question of excess nonexempt value of a homestead before the 1983 amendments became effective. The case at bar presents a question of excess nonexempt acreage of an urban homestead under the 1983 amendments.

**13.** To the extent that a bankruptcy court is authorized by the Code to address the exemption issue, our holding that Freedman raised the issue in its Motion arguably requires this court to determine the exempt status of the Debtor's Property. As applied to Tract 1, the 1983 amendments to the homestead provisions raise an unresolved issue of state law, viz., the manner by which excess acreage is to be determined for purposes of the urban homestead exemption. This court notes that no Texas court has

determined what effect the 1983 amendments to Texas' homestead law had on the determination of excess value or, now, acreage. Although there exist foreclosure procedures for excess rural acreage, see Tex.Prop.Code Ann. §§ 41.-021–.030, 42.003 (Vernon 1984), the Texas legislature failed to establish such procedures to govern creditors' foreclosure actions on excess urban acreage. Presumably, Texas courts will have to fill the procedural gap either by adopting the existing statutory framework for rural homesteads or by looking to the solution employed by Texas courts before that statutory framework was established. See, e.g., Mackey v. Wallace, 26 Tex. 526, 529–30 (1863).

**14.** There was no evidence adduced at trial that fixes the date the Debtor purchased the property. Presumably, considering the Debtor's representation that the $10,000 exemption was applicable, the property was purchased some time after 1971.

sparse record and lack of serious analysis.[15] Moreover, even assuming that a question has been fully presented and the record adequate, the Debtor has not overcome the strong presumption that legislative acts are constitutional. As the Supreme Court has observed:

> It is by now well established that legislative acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); *see also Ferguson v. Skrpua*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). Even when the legislation is applied retroactively, strong deference is accorded legislation in the field of economic policy. "Provided that a retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, —— U.S. ——, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984). The Court has made it plain that retroactive legislation does have to meet a burden not faced by legislation that has only future effects. "But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Id.*

It has been suggested that "the remedial purpose of the [1983] amendments [to Texas' homestead law] was to increase the protections ,afforded to all homestead claimants in this state as a result of the effects of inflation and increased market demands." [16] *In re Barnhart*, 47 B.R. 277, 283 (Bankr.N.D.Tex.1985).[17] Another purpose of the legislation was to end the different treatment of urban and rural homesteads by basing both exemptions on an acreage standard.[18] This court recognizes that there is an incongruity between the legislative purpose and the application of the amendments in the instant case, which involves a debtor who purchased more than one acre of land for less than $10,000. But it is apparent that in passing the amendments the Texas legislature was primarily concerned with debtors, like those in *Barnhart*, whose one acre or less of homestead was valued at a sum greater than $10,000 at the time of its purchase. Despite this incongruity, it was eminently rational for the Texas legislature to conclude that the purposes of the 1983 amendments could be more fully effectuated if its provisions were applied retroactively. Therefore the Texas legislature's decision to permit retroactive application of the 1983 homestead law amendments withstands the due process challenge.[19]

---

**15.** Not only does the Debtor make his constitutional challenge without citation of authority and with minimal argument, Freedman fails to counter the challenge with any argument or authority.

**16.** *See Analysis of Proposed Constitutional Amendment as Appearing on November 8, 1983 Ballot* in Texas Legislative Council, Information Report 83–4, Aug. 1983, at 13, *cited in* Gibbs, Jillson & Mohney, *Creditor and Consumer Rights, Annual Survey of Texas Law*, 38 Sw.L.J. 281, 309 n. 212 (1984).

**17.** In *Barnhart*, the 1983 amendments to the Texas homestead provisions withstood a constitutional attack mounted by judicial lien creditors under the Contracts Clause of the United States Constitution. U.S.Const. art. I, § 10.

**18.** "Other reasons for the constitutional amendment were that the change would harmonize the urban homestead provisions with the provisions for rural homesteads, which have always been defined in terms of acreage, and would make unnecessary periodic amendment of the state constitution to reflect changes in the price of land or standard of living." Gibbs, Jillson & Mohney, *supra* note 16, at 309 (footnotes omitted).

**19.** *Cf. In re Gifford*, 688 F.2d 447 (7th Cir.1982) (lien avoidance provision of Bankruptcy Code not violative of due process as applied to preenactment security interest); *In re Webber*, 674 F.2d 796 (9th Cir.) (same), *cert. denied*, 459 U.S. 1086, 103 S.Ct. 567, 74 L.Ed.2d 931 (1982); *In re Ashe*, 669 F.2d 105, 110 (3d Cir.) (same), *vacated on other grounds*, 459 U.S. 1082, 103 S.Ct. 563,

The Debtor's ex post facto challenge has absolutely no merit because the ex post facto provision of the Constitution is applicable only to criminal statutes. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798); *Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 742, 98 L.Ed. 911 (1954); *Harisiades v. Shaughnessy,* 342 U.S. 580, 594–95, 72 S.Ct. 512, 521–22, 96 L.Ed. 586 (1952).

### 2. *Tract 2: Business Homestead*

The Debtor claims that Tract 2 constitutes his business homestead. The test under Texas law for whether property qualifies as a business homestead is a familiar one: "To preserve a place of business which is separate and distinct from the home as a part of the homestead, the head of the family must have a calling or business to which the property is adapted and reasonably necessary and such property must be used as a place to exercise the calling or business of the head of the family." *Haynes v. Vermillion,* 242 S.W.2d 444, 446 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n.r.e.); *see also Shryock & Rowland v. Latimer,* 57 Tex. 674 (1882); *O'Neil v. Mack Trucks, Inc.,* 533 S.W.2d 832, 838 (Tex.Civ.App.—El Paso 1975), *rev'd,* 542 S.W.2d 112 (Tex.1976), *recalled,* 551 S.W.2d 32 (Tex.1977); McSwan, *The Texas Business Homestead,* 15 Baylor L.Rev. 39, 42–43 (1963). Freedman argues that none of the *Haynes* elements is present in the case *sub judice:* Tract 2 is used only as an unimproved storeroom; it houses no equipment necessary to the operation of a slaughterhouse—the Debtor's primary calling; the property is not necessary to the Debtor's business since there exists a place to store boxes on the leased premises in Madisonville; and, most importantly, Tract 2 is not the Debtor's place of business. The Debtor answers by asserting that he does make business use of Tract 2: the property is used as a warehouse; it is visited more than twice a week

for the purpose of obtaining boxes; and the premises are serviced by telephone, which is answered by the Debtor's wife.

■ Although this court recognizes that exemption laws are to be liberally construed in favor of debtors, *see, e.g., Lewis v. Morrison Supply Co.,* 231 F.2d 632, 634 (5th Cir.1956); *In re Berry,* 33 B.R. 351 (Bankr.W.D.N.C.1983); *Cocke v. Conquest,* 120 Tex. 43, 35 S.W.2d 673 (1931), Texas courts have long made it plain that the scope of the business homestead is not intended to extend so far as to protect from execution property which is only incidentally useful or profitable to the business, such as property used to warehouse goods. *See Ford v. Aetna Insurance Co.,* 424 S.W.2d 612, 615–16 (Tex.1968); *Rock Island Plow Co. v. Alten,* 102 Tex. 366, 116 S.W. 1144 (1909); *McDonald v. Campbell,* 57 Tex. 614 (1882). The Texas Supreme Court explained in *Ford:*

It is apparent from [*McDonald* and *Rock Island Plow* ] that non-contiguity of the lots involved was not the controlling factor in determining that such non-contiguous lots were not part of the business homestead. Instead, the Court determined that the business homestead exemption was limited only to those lots actually used in the exercise of the business; and therefore lots merely used "in connection with" the business or "in aid of" the business actually conducted on another lot were not protected by the business homestead exemption.

. . . .

We hold, therefore, that the business homestead exemption may extend to two non-contiguous lots when such lots are used as a place for the operation of the business of the head of the family, and *both are essential to and necessary for such business, not merely being used in aid of the business.*

424 S.W.2d at 615–16 (emphasis added) [20]; *see also Hizie v. Moody,* 1 Tex.Civ.App. 26,

---

74 L.Ed.2d 927 (1982), *on remand,* 712 F.2d 864 (3d Cir.1983), *cert. denied,* — U.S. —, 104

S.Ct. 1279, 79 L.Ed.2d 683 (1984); *In re Bradford,* 6 B.R. 741 (D.Nev.1980) (same).

**20.** In assessing how courts should apply the

20 S.W. 769, 771 (1892) ("[T]he business home must be the place where the head of the family exercises his calling or business. It is his workshop, office, or other place where he habitually is in the following of his calling, and not every other lot or building which he may incidentally use in connection therewith.")

■ It is clear from the evidence that the Debtor's primary business of meat processing was conducted on the leased premises in Madisonville and that the Debtor's use of the building on Tract 2 for storing boxes was a use only incidental to the primary business. Consequently, notwithstanding the Debtor's conclusory testimony that the building on Tract 2 was necessary to his primary calling, this court finds that the property was being used only in aid of

Ford test—that the business homestead extends to property which is "essential to and necessary for such business, not merely being used in aid of the business"—one commentator has written:

In light of the court's emphasis that a lot must not be used merely in aid of the business, the test of exemption should be interpreted to require that a lot be necessary in the indispensable sense. This should not be interpreted to deny an exemption unless it is shown that without the lot the business would perish. Whether a lot is "essential to and necessary for" the business should depend upon whether a business could keep the character it had at the time of execution if it were deprived of the lot. Judging from the facts of Ford, the twin determinants are purpose and space: if the activity conducted on the lot is required to carry out the purpose of the business, the exemption should be allowed unless it is shown the activity could as well be conducted on one lot as two.

Recent Decisions, *Business Homestead—Non-Continuous Lots*, 22 Sw.L.J. 694, 695–96 (1968).

21. *See also Bauman v. Stark*, 185 S.W. 921, 925 (Tex.Civ.App.—Amarillo 1916, writ dism'd); *Harrington v. Mayo*, 61 Tex.Civ.App. 610, 130 S.W. 650 (1910).

22. This court carefully considered whether this case was an appropriate one for an exercise of abstention under 28 U.S.C. § 1334(c)(1), which provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11.

the Debtor's primary business and was not indispensable to his business.[21] Therefore, Tract 2 is not exempt property and the judgment lien attaches thereto.

### 3. Summary

In summary, a portion of Tract 1 and the whole of Trace 2 are in fact nonexempt and therefore susceptible to the judgment lien. The Debtor does not object to a lifting of the stay as to nonexempt property. Consequently, the stay is modified to permit Freedman to institute a suit to foreclose Tracts 1 and 2 in state court. In that action, the state court will be free to address, if necessary, the heretofore unresolved issue concerning the manner of determining excess acreage of an urban homestead after the 1983 amendments.[22]

Whether a decision under this discretionary provision is reviewable on appeal is a question not free from doubt. *See, e.g., In re S.E. Hernsby & Sons Sand & Gravel Co.*, 45 B.R. 988, 993 (Bankr.M.D.La.1985). Nevertheless, it is apparent that claims of exemption under the Bankruptcy Code are of the kinds of issues that would be proceedings arising under Title 11 in which a bankruptcy court may exercise its discretion to abstain under section 1334(c)(1). *See id.; see generally* 1 Collier on Bankruptcy ¶ 3.01 (15th ed. 1985). In view of the fact that this case involves important and unresolved questions of state law and that resolution of the exemption issue implicates no bankruptcy interest apart from the validity of the claimed exemption, interests of comity with state courts and respect for state law would augur in favor of this court's abstaining from deciding the excess acreage issue revolving around Tract 1. As the Supreme Court held in *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), there will be circumstances when "the interests of the estate and the parties will best be served [if the district court will] consent to submission to state courts of particular controversies involving unsettled questions of state property law and arising in the course of bankruptcy administration." *Id.* at 483, 60 S.Ct. at 630. The case at bar involves an unsettled question of state law that is best resolved by a Texas court in the first instance. Given this court's disposition of the Motion, however, we need not invoke section 1334(c)(1). However, lifting of the stay to permit Freedman to bring a foreclosure action in state court will permit the state court to resolve the issue of how excess urban acreage is to be determined under the 1983 amendments. Hence, our disposition of the Motion is consistent with the interests

## D. *Marshaling of the Assets*

Freedman requested at trial that the equitable doctrine of marshaling of assets be employed by the court to ensure that there is a fund from which Freedman may recover. Freedman suggests that the marshaling issue, bound up as it is with the exemption issue, implicates the interests of the bankruptcy estate so as to require this court to determine the exemption issue and marshal assets as necessary. The short answer to this argument is that Freedman's failure to raise the marshaling issue in its pleadings—and thereby give notice to other parties in interest including, in this case, the Bank, that marshaling was to be considered—precludes this court from considering such a remedy.

Although a few courts have held that, if the issue is raised at any time during the trial, it is proper for the court to consider the marshaling remedy, *see In re United Retail Corp.,* 33 B.R. 150, 152 (Bankr.D.Hawaii 1983); *Sherron v. Acton,* 18 A. 978 (N.J.Ch.1890), the general rule is that the doctrine must be raised by the pleadings, and that a party claiming the benefit of marshaling must allege such facts as entitle him to its application. *See Mutual Benefit Life Ins. Co. v. Yarborough's Estate,* 169 S.C. 486, 169 S.E. 289, 296 (1933); *Johnson v. Wilson,* 145 Wash. 515, 261 P. 102 (1927); *Humphrey v. Jones,* 41 S.W.2d 263 (Tex.Civ.App.—Fort Worth 1931, writ ref'd); Comment, *Marshaling Assets in Texas,* 34 Tex.L.Rev. 1054, 1063 (1956); 55 C.J.S. *Marshaling Assets and Securities* § 25; *cf. Theus v. Bankers Health & Life Ins. Co.,* 216 Ga. 377, 116 S.E.2d 573, 574 (1960).

In the instant case, Freedman failed to raise the marshaling issue in its pleadings. Other creditors, including the Bank, whose interests would be most directly affected by marshaling, received no notice that marshaling would be proposed to the bankruptcy court by Freedman during the hearing on the motion for relief from stay (although the creditors did receive notice of that hearing). Freedman argues that notice of the hearing on the Motion was sufficient to place the Bank on notice that Freedman intended to pursue the marshaling remedy because the Motion evinced Freedman's intent to foreclose its interest. But notice of the potential foreclosure simply did not of itself constitute notice that marshaling was an issue to be considered at the hearing. Therefore this court declines to marshal assets.

## III.

## CONCLUSION

This court holds that Freedman's motion for relief from stay constituted an objection to the Debtor's claim of exemptions and that at least a portion of Tract 1 and all of Tract 2 constitutes nonexempt property under Texas homestead law. Hence, because the Debtor has no objection to a lifting of the stay as to his nonexempt property, the stay is hereby lifted to permit Freedman to institute a suit to foreclose on the Property in state court. It is not necessary to a disposition of this matter that this court adjudicate the issue of excess acreage—an unresolved issue of state law best left to the state court to determine in the first instance in a suit to foreclose. Accordingly, for the foregoing reasons, Freedman's motion for relief from the automatic stay is GRANTED.

sought to be furthered by the voluntary absten-          tion provision.