In the Matter of James Thomas WEBB, Sr., and Verda Faye Webb, Debtors.

James Thomas WEBB, Sr., and Verda Faye Webb, dba Webb Auto Supply, Appellees,

v.

RESERVE LIFE INSURANCE COMPANY, Appellant.

No. 91-1356.

United States Court of Appeals, Fifth Circuit.

March 5, 1992.

Rehearing Denied April 1, 1992.

Charles M. Walls, R. Byrn Bass, Jr., Harding, Bass, Fargason & Booth, Lubbock, Tex., for appellant.

Robert W. St. Clair, Curry, Curry & Robinson, Lubbock, Tex., for appellees, debtors.

Before GOLDBERG, JOLLY, and WIENER, Circuit Judges

WIENER, Circuit Judge:

In this adversary proceeding arising out of a Chapter 7 bankruptcy, Defendant-Appellant, Reserve Life Insurance Company (Reserve), appeals from a decision of the district court reversing a bankruptcy court holding that a parcel of real property owned by James Thomas Webb, Sr. and Verda Faye Webb, the Debtors, did not constitute a part of their business homestead under Texas law. Finding that the district court did not apply the correct standard in its review of the bankruptcy court decision, 119 B.R. 114, we reverse the district court and reinstate and affirm the bankruptcy court judgment.

I.

FACTS

The Webbs started Webb Auto Supply as a retail and wholesale auto parts business in the early 1950s. In 1959, the Webbs

purchased a building located at the corner of Avenue F and 16th Street in Lubbock, Texas (the 16th Street property) in which they operated Webb Auto Supply.

In 1969, the Webbs purchased another property in which they located a second auto parts store (the 34th Street property). Shortly after acquiring the 34th Street property, the Webbs remodeled one side of the building and built an addition to the other side. The remodeled space and the addition were rented to other merchants from time to time, but were never used in the Webbs' auto supply business.

In need of operating capital for their business in 1980, the Webbs executed a note in the original amount of $101,250 in favor of the First National Bank of Lubbock. As security for this note, the Webbs executed a deed of trust encumbering various properties, including the 34th Street property. The following year, the Webbs defaulted on the note, and refinanced it by executing a new note in the same principal amount in favor of Eureka Life Insurance Company. As security, the Webbs gave Eureka a deed of trust on the 34th Street property. At the same time, the Webbs executed a document designating both their personal residence and the 16th Street property as their urban homestead and expressly disclaiming the 34th Street property as constituting any part of their homestead. Reserve now holds the Eureka note and the deed of trust encumbering the 34th Street property.

In 1988, again in default and facing foreclosure, the Webbs filed for Chapter 11 bankruptcy protection. On June 16, 1988, the 34th Street property was heavily damaged in a fire, and the Webbs were unable to continue their business at that location. Shortly after the fire, Webb Auto Supply ceased doing business. Subsequently, the Chapter 11 proceeding was converted to a Chapter 7 proceeding, but the case was dismissed several months later. In neither bankruptcy proceeding did the Webbs originally list the 34th Street property as homestead property. They did, however, amend their schedules to reflect their desire to include the 34th Street property in their homestead exemption.

In November of 1989, the Webbs again filed for protection under Chapter 7, listing the 34th Street property as part of their homestead. Reserve sought to have the automatic stay lifted in order to foreclose its lien on the 34th Street property, but the Webbs countered with an adversary proceeding to determine the validity of the lien claimed by Reserve. The bankruptcy court found that the 34th Street property was not a part of the Webbs' homestead and that the Reserve lien was valid. The automatic stay was lifted, but the bankruptcy court granted the Webbs' motion for a stay pending appeal to the district court, conditioned on the Webbs' posting a bond in the amount of $25,000. The Webbs failed to post the required bond timely, and the 34th Street property was foreclosed.

The Webbs appealed the bankruptcy court's decision to the district court. The district court, purporting to apply a clearly erroneous standard of review, found that the 34th Street property, at least insofar as it was used in the conduct of Webb Auto Supply, was protected by the Webbs' homestead exemption, invalidating the lien as to that property. The district court remanded the case to the bankruptcy court for the sole purpose of determining the legal description of that portion of the 34th Street property used in the Webbs' auto supply business. Reserve timely appealed.

## II.

## ANALYSIS

### A. The District Court's Standard of Review

When reviewing a bankruptcy court's decision in a "core proceeding,"[1] a district court functions as a appellate court

---

1. A "core proceeding" is one that "invokes a substantive right provided by Title 11 [the Bankruptcy Code] or [ ] is a proceeding that by its nature could arise only in the context of a bankruptcy case." *In the Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987). Determinations of the validity, extent, or priority of liens, are core proceedings that a bankruptcy judge may hear and determine. 28 U.S.C. § 157(b)(2)(K).

and applies the standard of review generally applied in federal court appeals.[2] Federal Rule of Bankruptcy Procedure 8013 prescribes the standard that a district court employs in reviewing a bankruptcy court's findings of fact. It provides in relevant part:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.

The leading case defining and giving guidance on the term "clearly erroneous" is the Supreme Court's opinion in *Anderson v. City of Bessemer*.[3] Although *Anderson* concerned a federal appellate court's review of a district court decision, it is equally applicable to a district court's review of a bankruptcy court decision. The Court in *Anderson* instructs that:

> Although the meaning of the phrase "clearly erroneous" is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles ... is that "[a] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." ... This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence,

the factfinder's choice between them cannot be clearly erroneous.[4]

Our first task is to determine whether the district court did in fact apply the clearly erroneous standard in conducting its review of the bankruptcy court's findings of fact. If we determine that the district court failed to do so, our second task is to review the facts found by the bankruptcy court under the clearly erroneous standard. Finally, if we find no clear error by the bankruptcy court, we must determine whether the conclusions it derived are correct, based on its findings of fact.

### B. The Bankruptcy and District Courts' Findings of Fact

After a two day hearing, in which Mr. Webb and another witness testified, the bankruptcy court entered its "Memorandum of Opinion on Homestead." In this opinion, the bankruptcy court set out the facts of the case essentially as we have above. In addition, the bankruptcy court found that the Webbs

> operated two separate stores in similar lines of business, but not as one integrated business.
>
> Undoubtedly, the 34th Street property was an aid to the retail automotive parts business. On the other hand, retail business continued from the [16th Street] property where wholesale business was also conducted and where the records of the business were kept. The court cannot find that the 34th Street property was *essential to and necessary for* the Debtors' business. In effect, the Debtors had two places of business, but they are entitled to claim only one as a business homestead. (emphasis added).

From these facts, the bankruptcy court concluded that the 34th Street property was not part of the Webbs' business homestead and, therefore, Reserve's lien on the 34th Street property was valid.

---

**2.** *In the Matter of Hipp*, 895 F.2d 1503, 1517 (5th Cir.1990).

**3.** 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**4.** *Id.* at 573–74, 105 S.Ct. at 1511.

In its opinion reversing the bankruptcy court, the district court verbalized its obligation to apply the clearly erroneous standard in its review of the bankruptcy court's decision. That is not, however, what the district court proceeded to do. After examining the law governing Texas business homesteads, the district court indisputably conducted a de novo review of the factual findings of the bankruptcy court. This is obvious from an examination of the district court opinion, which reads in part:

In applying the test of *Ford*[5] to the facts before the Bankruptcy Court, the record indicates that two witnesses testified—Mr. Webb and a James Askew. Both were called by Mr. Webb.

Mr. Askew testified that, in his opinion, it would have been necessary for Webb to have a location outside of the downtown Lubbock area in order to be competitive in the retail and wholesale auto parts supply sales business, both in 1969 and continuing though (sic) the date of the hearing. Mr. Webb testified that:

(1) In the early 1980s the 16th Street store was in the wholesaling and warehousing business;

(2) Most of the gross revenue came from the 16th Street store, but most of net income was at the 34th Street store because of the lower overhead;

(3) The business records were kept at the 16th Street store and the businesses were handled more or less as one business—the register receipts or tickets or invoices from the 34th Street location were taken to the 16th Street location, where the bookkeepers would put them in separate ledgers, daily workbooks, so they could identify what each store did;

(4) For bookkeeping purposes, it was all one operation;

(5) The inventory for the 34th Street store came from the 16th Street location;

(6) The 34th Street store was a satellite operation;

(7) The two business (sic) were "in a sense" operated separately—they were on two separate locations, but they were operated as Webb Auto Supply;

(8) The 34th Street location was primarily a retail sales operation, but wholesale and dealer business was also conducted there;

(9) The Webbs were occupying the 34th Street property at the time the line was given;

(10) Regional wholesaling and warehousing was primarily done from the 16th Street store in the early 1980s;

(11) The 34th Street location reached the retail market that the downtown store could not reach;

(12) It would have been difficult to remain in business profitably without the 34th Street store in 1981;

(13) After the 34th Street property burned in 1988, Webb Auto had to close the 16th Street property within a few months;

(14) Mr. Webb did not believe he could have stayed in business without the expansion to the 34th Street location;

(15) The business started turning a better profit after he purchased the 34th Street property;

(16) The rent from the businesses on either side of the 34th Street store was put into the Webb Auto Store business;

(17) At the time he signed the homestead designation in 1981 he did not know there was such a thing as a business homestead;

(18) In 1981 when the lien was given, the 34th Street store was in operation, there was a sign at the location, listing in the phone book, etc.;

(19) In June, 1981, Webb was not occupying the property on either side of 3312 34th Street as his business;

(20) If the 34th Street property had been taken away from him in June, 1981, the character of his business would have materially changed and it would have been more difficult to continue in business;

---

**5.** *Ford v. Aetna Insurance Company,* 424 S.W.2d 612, 616 (Tex.1968).

(21) The primary bookkeeping for this sole proprietorship was actually done physically at the 16th Street store.

■ Although we recognize that the district court must review the record in its entirety to determine whether or not "it is left with the firm conviction that a mistake has been committed,"[6] the district court is not free to weigh the evidence as it would under a de novo standard. If the district court were faithfully to follow the proper standard as set out in Bankruptcy Rule 8013 and as further defined in *Anderson*, the factual determinations of the bankruptcy court would be a necessary starting point under the clearly erroneous standard. This the district court did not do. In fact, it made no reference whatsoever to the factual findings of the bankruptcy court. When the district court ignored the bankruptcy court's findings altogether, it was by definition conducting a de novo review of the record and formulating its own findings of fact, as illustrated above. The court weighed the evidence differently than did the bankruptcy court, and reached a different conclusion as to which party should prevail, giving no regard whatsoever to the factual findings of the bankruptcy court.

Furthermore, the district court's opinion contains no indication that it recognized the deference to be afforded the bankruptcy court's judgments as to the credibility of witnesses. The Court in *Anderson* instructed that

> When findings of fact are based on determinations regarding the credibility of witnesses, ... (the Rules demand) even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.[7]

Likewise, Bankruptcy Rule 8013 specifically counsels the district court to give "due regard ... to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses."

Most of evidence in the case appears to have been gleaned from the testimony of two witnesses, Mr. Webb and another called by him, at the hearing in the adversary proceeding. The bankruptcy court's findings of fact may well have been influenced by observation of these witnesses on the stand. Such judgments are often inextricably interwoven with the rest of the evidence presented to the trial court. Thus, it is virtually impossible for the district court to emulate the process and consider the evidence in exactly the same light as did the bankruptcy court. This is a principal reason that the clearly erroneous standard is prescribed and that the de novo standard of review of findings of fact is prohibited.

The findings made by the district court in this case may be just as accurate as those of the bankruptcy court, or even more so. But because the district court ignored the facts found by the bankruptcy court and weighed the evidence de novo, we must heed the admonishment of *Anderson* that

> [i]f the [bankruptcy court's] account of the evidence is *plausible* in light of the record viewed in its entirety, the [district court] may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.[8]

The district court never addressed whether the bankruptcy court's findings were plausible or implausible. Our review of the record, however, convinces us that the bankruptcy court's view of the evidence is plausible. A reasonable factfinder could have found from the evidence that the 34th Street property was not *essential to and necessary for* the Webbs' business. Therefore, even though the district court weighed the evidence differently than the bankruptcy court and reached the opposite

---

6. *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511.

7. *Id.* at 575, 105 S.Ct. at 1512.

8. *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511 (emphasis added).

conclusion, the bankruptcy court's view cannot be deemed clearly erroneous and must prevail.

In essence, the Webbs obtained from the district court a second trial on the merits. As clearly set out in *Anderson,* that is not the proper function of a district court in reviewing the factual findings of the bankruptcy court.

## C. The Bankruptcy Court's Conclusions of Law

Having determined that the district court improperly conducted a de novo review of the evidence, and that the bankruptcy court's findings of fact are plausible and therefore are not clearly erroneous, we must determine whether the bankruptcy court reached the correct conclusions when it applied the law to the facts as it found them.

The homestead provision of the Texas Constitution reads in pertinent part:

[T]he homestead in a city, town or village, shall consist of [a] lot or lots amounting to not more than one acre of land, together with any improvements on the land; provided, that the same shall be used for the purpose of a home, or as a place to exercise the calling or business of the homestead claimant, whether a single adult person, or the head of a family; ...[9]

Texas Property Code § 41.002 further clarifies the homestead exemption:

(a) If used for the purpose of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than one acre of land which may be in one or more lots, with any improvements thereon.

Given the retroactive effect of the foregoing provisions,[10] the one acre limitation on urban homesteads was applicable in 1981 when the Eureka lien was placed on the 34th Street property.

The Texas Supreme Court had occasion to consider the Texas Constitution's provision for a "business homestead," in light of another provision of the Constitution: that a homestead need not be limited to one lot. In *Ford v. Aetna Insurance Company*[11] the court held that:

[T]he business homestead exemption may extend to two non-contiguous lots when such lots are used as a place for the operation of the business of the head of a family, and both are *essential to and necessary for such business, not merely being used in aid of the business.*[12]

In *Ford,* the court allowed a homestead exemption for two non-contiguous lots, one that the owner testified was used as the office, warehouse and sales area for his plumbing business, and another that contained his workshop and a storage area. The owner testified, and the court found, that the two lots were used collectively and were essential to the operation of the business.

In *In re Starns,*[13] the district court clarified the question of what property may constitute a business homestead, stating that:

Texas courts have long made it plain that the scope of the business homestead is not intended to extend so far as to protect from execution property which is only incidentally useful or profitable to the business, such as property used to warehouse goods.[14]

The *Starns* court also recognized the Texas Supreme Court holding in *Ford:*[15]

---

**9.** Tex. Const. art XVI, § 51.

**10.** Tex.Prop.Code § 41.002(d) (West Supp.1992) ("The definition of a homestead as provided in this section applies to all homesteads in this state whenever created.") *See also In re Niland,* 50 B.R. 468, 478 (Bankr.N.D.Tex.1985).

**11.** 424 S.W.2d 612 (Tex.1968).

**12.** *Id.* at 616 (emphasis added).

**13.** 52 B.R. 405 (S.D.Tex.1989).

**14.** *Id.* at 414.

**15.** Instead of the *Ford* "essential to and necessary for" test, the Webbs urge us to apply a "test" they garner from *Starns.* In *Starns,* the court noted that in Texas, a property that is separate from the home can be, nevertheless, part of the homestead if it is "adapted and reasonably necessary" to the claimant's business

In assessing how courts should apply the *Ford* test—that the business homestead extends to property which is "essential to and necessary for such business, not merely being used in aid of the business"—one commentator has written:

> In light of the court's emphasis that a lot must not be used merely in aid of the business, the test of exemption should be interpreted to require that a lot be necessary in the indispensable sense. This should not be interpreted to deny an exemption unless it is shown that without the lot the business would perish. Whether a lot is "essential to and necessary for" the business should depend upon whether a business could keep the character it had at the time of execution if it were deprived of the lot. Judging from the facts of *Ford*, the twin determinants are purpose and space: if the activity conducted on the lot is required to carry out the purpose of the business, the exemption should be allowed unless it is shown the activity could as well be conducted on one lot as two.[16]

██ Applying the *Ford* test, the bankruptcy court in the instant case found that the 34th Street property was not "essential to and necessary for" for the operation of Webb Auto Supply, and therefore did not qualify for the business homestead exemption. We agree. The findings of the bankruptcy court confirm that the properties were not used in a single, integrated business. Although the 34th Street property was primarily used to capture an expanding retail market, the Webbs conducted both wholesale and retail businesses at the 16th Street property, as they had since that property was acquired in 1959. The Webbs kept separate books on each property and otherwise operated them separately. The evidence also indicates that the Webbs expressly disclaimed the 34th Street property when they entered into the loan arrangement with Eureka. Although it is arguable that such a declaration is not an absolute bar to protection under the homestead exemption laws of Texas,[17] it is a factor worthy of inclusion in the factual calculus because the declaration of non-homestead by the Webbs is a prior statement inconsistent with the Webbs' present professed position. We are satisfied that in applying the jurisprudence to the facts, the bankruptcy court committed no reversible error when it concluded that the 34th Street property was not a part of the Webbs' business homestead.[18]

## III.

## CONCLUSION

The district court did not properly apply the clearly erroneous standard of review to the findings of the bankruptcy court. Had it done so, it would have concluded, as to we, that the bankruptcy court's findings were plausible, and, therefore, were not clearly erroneous. Accepting its findings of fact, we find that the bankruptcy court was correct in concluding that the 34th Street property was not "essential to and necessary for" the operation of the Webbs' auto supply business. As that property thus could not qualify for a business homestead exemption, Reserve's lien was valid. For the foregoing reasons, the judgment of the district court is REVERSED, and the judgment of the bankruptcy court is REINSTATED and AFFIRMED.

or calling. *Starns*, 52 B.R. at 414 (quoting *Haynes v. Vermillion*, 242 S.W.2d 444, 446 (Tex.Civ.App.—Fort Worth 1951)). The *Starns* court, however, never applied such a "reasonably necessary" formula to the facts of that case. Instead, it expressly recognized *Ford* as controlling precedent and correctly applied its test. The district court in the instant case also recognized that *Ford* is controlling in the instant case, as did the bankruptcy court.

16. *Starns*, 52 B.R. at 415 n. 20, citing *Recent Decisions, Business Homestead—Non-Contiguous Lots*, 22 Sw.L.J. 694, 695–96 (1986).

17. *See In re Niland*, 50 B.R. 468.

18. Because we are reversing the district court's decision and reinstating the judgment of the bankruptcy court, it is unnecessary for us to reach the Appellant's argument that the Webbs' appeal to the district court was moot.