**In re David REEDY, Chapter 7 Debtor.**

**OLD NATIONAL BANK, Plaintiff,**

v.

**David REEDY, Defendant.**

**Bankruptcy No. 93–12345–T.**
**Adv. No. 93–1252.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 10, 1994.

Russell Q. Hatchl, Alexandria, VA, for plaintiff.

Thomas Woehrle, Springfield, VA, for debtor.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Trial on the plaintiff's complaint to deny discharge pursuant to 11 U.S.C. § 727(a)(2) was held in Alexandria, Virginia, on June 1, 1994. At the conclusion of trial the court announced findings of fact and conclusions of law and ruled in favor of debtor. This opinion supplements the court's bench ruling.

### Facts

The debtor filed an individual Chapter 7 bankruptcy petition on May 28, 1993.

The debtor is a graduate of the U.S. Naval Academy and attended the Harvard Business School. He was employed by the Federal Government for 26 years. After leaving the government he worked as a consultant specializing in helping businesses, primarily architectural and engineering firms, obtain government contracts.

The debtor is married to Elizabeth Reedy, who is a graduate of a business college and has been employed as an administrative assistant to several business executives. She is somewhat financially independent, having inherited approximately $100,000.00 from her parents.

During the years 1990 and 1991 debtor was a part owner of and served as consultant for several business entities which were controlled by other individuals. During this business relationship debtor personally guaranteed loans to corporate entities, including two loans from the plaintiff, Old National Bank, and was otherwise personally obligated on other corporate debt. These businesses encountered financial problems, and debtor was forced out by the other owners in August 1991.

From August 6, 1991, through April 21, 1993, with the financial assistance of his wife, debtor paid a total of $73,407.55 of personal indebtedness arising out of his prior business relationships.

During approximately the first half of the year 1992 debtor was engaged in consulting work on his own account, for which he received income in the amount of $27,174.00.

Because Elizabeth Reedy believed that much of her husband's financial problems were caused by his own poor management, she determined that if their financial problems were to be resolved she must control the family finances. This would leave debtor

free to concentrate on his consulting services. The debtor agreed.

On June 29, 1992, Elizabeth Reedy formed a Virginia corporation, DAR Consultants, Inc., of which she was sole stockholder and director and the corporation's president. The only paid-in capital to DAR during its first year of operation was $6,000.00, which was paid by Mrs. Reedy from her own funds. The principal business activity of DAR was to furnish consulting services to architects and engineers. (Ex. C)[1]

After DAR was formed, debtor served as its consultant, and while he was not an officer of the corporation, he effectively ran the consulting business. During the period from the formation of DAR until he filed bankruptcy on May 28, 1993, debtor performed consulting services, generating gross receipts to DAR in the amount of $112,542.75. During this period DAR did not pay debtor a salary as such; rather the corporation paid various sums to debtor or in his behalf for taxes and personal expenses, including business travel. During this period, Elizabeth Reedy managed and controlled the finances of DAR, including expenditures of cash.

In his bankruptcy schedules, debtor listed personal property at a total value of $4,436.00 along with a residence which he owns jointly with Elizabeth Reedy.

During the one year period prior to debtor's filing bankruptcy, he made no significant transfers of assets. He made no transfers with intent to hinder, delay or defraud creditors.

### Discussion And Conclusions

Plaintiff's complaint asks the court to deny debtor's chapter 7 discharge in bankruptcy under § 727(a)(2) of the Bankruptcy Code which provides that a debtor will not receive a discharge if,

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

·  ·  ·  ·  ·

11 U.S.C. § 727(a)(2).

This adversary proceeding raises the rather novel issue of whether a debtor who transfers his income earning ability to another entity, which receives income from debtor's services, has made a transfer of the type contemplated by § 727(a)(2).

Plaintiff's argument goes something like this. Debtor, during the first half of 1992, earned substantial gross revenues from consulting services, and he could have continued to do so during the remainder of the year. Instead, however, debtor in collaboration with his wife formed a corporation in June 1992 and performed his services for the corporation which thereafter received the revenues he generated. Plaintiff asserts that each time the corporation received money from debtor's services, debtor effectively made a transfer in contravention of § 727(a)(2).

Although plaintiff cites no cases in support of its position, the court found several cases where debtors were denied their discharge for similar behavior. However, each of these cases are readily distinguishable from our case.

In *In re Winik,* 39 F.Supp. 3 (D.N.J.1941), the debtor had an arrangement with his employer whereby debtor's monthly salary check would be payable directly to his wife. However, the debtor testified that the only reason for this arrangement was to keep the salary beyond the reach of his creditors. *In re Winik,* 39 F.Supp. at 3. No such arrangement existed in the instant case.

Another debtor was denied discharge for conducting all of his personal and business affairs through a corporate bank account, making the monies unavailable for satisfaction of his individual debts. *Langston v. Balch (In re Balch),* 25 B.R. 22, 24 (Bankr. N.D.Tex.1982). The court acknowledged that if these were the only actions of the

---

1. DAR represents debtor's initials; the Reedys believed this recognition of debtor, who is known

in the government contracting industry, would benefit the business.

debtor being challenged, it would be "most reluctant to deny discharge." *In re Balch,* 25 B.R. at 24. However, this debtor had been doing so for 18 years. Moreover, debtor specifically acknowledged that he titled the corporation's stock in his wife's separate estate with the specific intent of preventing his creditors from reaching nonexempt assets. *In re Balch,* 25 B.R. at 24.

The instant case is devoid of any direct testimony by debtor concerning specific intent to delay, hinder or defraud his creditors. Instead, there is credible evidence regarding the legitimate business purpose in setting up and operating the corporation in its present form.

*Metropolitan Petroleum Co. v. Frumovitz (In re Frumovitz),* 10 B.R. 61 (Bankr. S.D.Fla.1981), is most similar to the instant case but nonetheless distinguishable. The court in *Frumovitz* ruled that debtor's operation of his business as a corporation whose shares were owned by his wife was a bar to discharge. *In re Frumovitz,* 10 B.R. at 65. The court hedged its position by citing several facts which militated against its holding, including the minimal value of the assets involved.[2]

The facts which influenced the court to rule against debtor included (1) debtor's insolvency at the time of incorporation, (2) debtor invested all the capital in the corporation, (3) debtor was the sole person involved in the operation of the business, (4) debtor treated the business as his own and did not observe the corporate formalities, and (5) debtor made an unexplained gift of the entire stock of the corporation to his wife, who contributed nothing in either capital or services. *In re Frumovitz,* 10 B.R. at 66.

Several of the facts which influenced the court in *Frumovitz* are absent from the instant case. Here, debtor's wife completely capitalized the business and maintained the books and records while debtor performed consulting services. Such control was a condition to debtor's wife's capital contribution.

Moreover, debtor's wife initiated the incorporation of the business and has been the only stockholder since its inception. No transfer of stock ever occurred.

Although I can envision other scenarios where a comparable arrangement might run afoul of § 727(a)(2), I must reject plaintiff's argument in this case for two reasons.[3]

(1) There was no transfer of property by debtor. Although debtor had earned some consulting commissions during the first half of 1992, there is no evidence that he had an established business or that he transferred a business to the corporation. He merely went to work for and rendered services to a new employer. There is no basis in the trial record for the court to ignore DAR Consultants, Inc., as a separate and independent entity. Thus DAR's receipts of consulting income did not constitute transfers by debtor.

(2) There was no intent by debtor to hinder or delay his creditors. The formation of DAR Consultants, Inc., by Mrs. Reedy almost a full year before debtor filed bankruptcy, served a legitimate business purpose of enabling debtor's wife to assist him in dealing with his financial problems. The new arrangement removed debtor's ability to make imprudent financial decisions and gave Mrs. Reedy the reassurance she needed if she was to assist him from her own independent financial resources.

A separate order will be entered.

---

**2.** In fact, the court conceded that "[a]s far as current income from the business is concerned, the corporate form seems to have had no practical effect as to the creditors." *In re Frumovitz,* 10 B.R. at 65.

**3.** My bench ruling at the conclusion of trial stated other grounds for my decision in favor of debtor. These other grounds remain in the trial record, and I need not repeat them here.