# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 26, 2007**

Charles R. Fulbruge III
Clerk

No. 06-10620
Summary Calendar

In Re: JOHN C BAUM; LINDA D BAUM

Debtors

_____

JOHN C BAUM

Appellant

v.

UNITED STATES TRUSTEE

Appellee

_____

Appeal from the United States District Court
for the Northern District of Texas, San Angelo
No. 6:05-CV-76

_____

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellant John C. Baum ("Baum") appeals the district court's order affirming the bankruptcy court's judgment denying Baum's discharge under 11 U.S.C. §§ 727(a)(2) and 727(a)(4). Finding no reversible error, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

A.    Factual Background

Baum and his companies, Baum Construction Company and Baum Construction Company, Inc., had an extensive lending history with First Coleman National Bank ("FCNB"). Baum entered into security agreements with FCNB covering all of Baum's assets, including his 392-acre ranch, most of his personal property, company equipment and vehicles, fixtures, and his livestock, including twenty-nine specifically identified horses.

Baum defaulted on his loans, and on November 4, 2003, he filed a joint petition for Chapter 11 bankruptcy with his wife, Linda Baum. On December 15, 2003, the bankruptcy court converted the case to a Chapter 7 proceeding.

Pursuant to the Bankruptcy Code, the Baums were required to file schedules of their assets and liabilities and a statement of financial affairs ("SOFA"). See 11 U.S.C. § 521(a). On January 10, 2004, after a series of delays and extensions, Baum and his wife filed their schedules and SOFA.[1] The Baums filed amended schedules and SOFAs on January 29, 2004, and May 5, 2004.

On April 2, 2004, the United States Trustee ("Trustee") filed a complaint objecting to the discharge of Baum under 11 U.S.C. § 727(a).[2] The Trustee alleged, inter alia, that Baum fraudulently concealed and transferred property of the estate in violation of § 727(a)(2), and that Baum knowingly and fraudulently made a false oath in violation of § 727(a)(4).

---

[1] Excuses for the delays varied but generally related to the Baums' inability to retain counsel.

[2] The Trustee did not object to Linda Baum's discharge, and she was discharged on April 5, 2005.

At the bankruptcy trial, the Trustee introduced testimony from numerous witnesses on Baum's pre- and post-petition transactions. The following are some of the specific transactions that ultimately led the bankruptcy court to deny Baum's discharge under § 727(a).

1. Pre-Petition Transactions

a. Diamond Tennis Bracelet

Several years before the Baums filed for bankruptcy, James Keith Neal, a friend of Baum's and the owner of three pawnshops, facilitated Baum's purchase of a diamond tennis bracelet from Ed Aleman for approximately $4000 to $5000. For one reason or another, Linda Baum gave the bracelet to Baum's mother, Joan Billings. At the bankruptcy trial, Billings testified that she gave the bracelet back to Baum in September or October of 2003 when she realized that the Baums were having financial difficulties. Billings further testified that she intended for Baum to sell the bracelet since his family "needed some money."

In November 2003, the same month that Baum filed for bankruptcy, Baum contacted Neal about reselling the bracelet. Neal testified that he contacted Aleman about purchasing the bracelet. Neal stated that after Aleman told him that he would be interesting in getting the bracelet back, Neal purchased the bracelet from Baum on behalf of Aleman for approximately $2000 to $3000 in cash.

Baum failed to note this transaction on both his schedules and SOFA. At trial, Dick Harris, an attorney who had attended the first meeting of the creditors, testified that Baum was asked about the sale of the tennis bracelet at the meeting. According to Harris, Baum replied that he had sold some jewelry that had been given to him by relatives but that the jewelry was not his.

b. .45 Colt Pistol

Testimony at trial indicated that Baum sold a .45 Colt pistol to James Keith Neal at the same time he sold Neal the diamond bracelet. Neal testified

at trial that in November 2003, he purchased a .45 Colt pistol from Baum for $500 in cash. While Baum did not dispute that he sold the gun to Neal, Baum testified that the .45 Colt pistol belonged to his eleven-year-old son.

Although Baum's schedules show that he sold two shotguns and a rifle to James Keith Neal for $600, they do not indicate that Baum sold a .45 Colt handgun for $500 to Neal in the year before he filed for bankruptcy. In addition, Baum's SOFA does not reference any specific firearms that he was purportedly holding for others, including his son.

### 2. Post-Petition Transactions

#### a. Preifert Portable Arena

On December 16, 2003, the bankruptcy court granted FCNB's motion for relief from the stay, which permitted FCNB to collect and foreclose on its collateral. Agents of FCNB attempted to enter Baum's property on December 18, 2003, but were refused. After obtaining a writ of sequestration from the state district court in Coleman County, representatives of FCNB and the Coleman County sheriff's office arrived at Baum's ranch on January 5, 2004, and seized FCNB's collateral, including a number of horses and personal property.

On January 5, 2004, FCNB representatives noted the presence of a Preifert portable arena on the property but did not seize the arena at that time. FCNB foreclosed on the ranch on January 6, 2004, but failed to take possession until February 11, 2004. When FCNB representatives arrived on February 11, 2004, they found that the arena was no longer on the property. FCNB later found the portable arena in the possession of Baum's friend, John Curtis.

Baum's original schedules, filed on January 10, 2004, indicate that he was the owner of the Preifert portable arena. On January 29, 2004, however, Baum amended his schedules to indicate that his friend, Russell Johnson, owned the arena. At the bankruptcy trial, Johnson testified that he did not own the arena, but that Baum had tried to give him the arena sometime in 2003 as payment for

4

a favor he had performed for Baum. Johnson testified, however, that he declined Baum's offer and never took possession or control of the arena.

In his trial testimony, Baum denied that he removed the arena from his property. Baum testified, however, that he was aware that his friend, John Curtis, was going to remove the arena from the ranch, but that he never gave Curtis permission to do so. Curtis's deposition testimony contradicted Baum's story; Curtis testified that Baum asked him to remove the arena and store it for Johnson, which he agreed to do. Curtis testified that he later surrendered the arena to FCNB.

### b. Damaged Guardrails

Mason Cullins, an agent of Pine Street Salvage, testified in his deposition that on February 20, 2004, which was after FCNB had foreclosed on Baum's property, Baum permitted Cullins to enter Baum's former ranch and remove damaged guardrails from the property. The Trustee learned of this unauthorized sale of estate property and intercepted a check from Pine Street Salvage in the amount of $532.40 for the scrap value of the guardrails.

Baum's schedules and SOFA do not list any inventory of used guardrails. At trial, Baum denied his involvement in this transaction.

## B. Procedural History

On April 5, 2005, the bankruptcy court denied Baum's discharge under § 727(a). The bankruptcy court found that Baum, with the requisite fraudulent intent, concealed his ownership of and allowed to be transferred post-petition the portable arena and the damaged guardrails, in violation of § 727(a)(2). The bankruptcy court also found that Baum knowingly and fraudulently failed to disclose his pre-petition transfer of the diamond tennis bracelet and the .45 Colt handgun, in violation of § 727(a)(4).[3]

---

[3] The bankruptcy court made other findings of fact and conclusions of law concerning Baum's pre-petition and post-petition transfer of property. We need not reach these findings,

The district court affirmed the bankruptcy court, concluding that the bankruptcy court's findings were not clearly erroneous. Baum now appeals, disputing the underlying factual findings that the bankruptcy court used in denying his discharge. Baum also argues that the Trustee failed to prove by a preponderance of the evidence that he concealed and transferred property post-petition with the requisite fraudulent intent, in violation of § 727(a)(2), or that he made a false oath with the requisite intent, in violation of § 727(a)(4). This court has jurisdiction under 28 U.S.C. § 158(d) and § 1291.

## II. STANDARD OF REVIEW

This court applies the same standard of review as the district court when reviewing the decision of the bankruptcy court. See Nesco Acceptance Corp. v. Jay (In re Jay), 432 F.3d 323, 325 (5th Cir. 2005). "'We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.'" Robertson v. Dennis (In re Dennis), 330 F.3d 696, 701 (5th Cir. 2003) (quoting Gamble v. Gamble (In re Gamble), 143 F.3d 223, 225 (5th Cir. 1998)). "A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" Id. (quoting Hibernia Nat'l Bank v. Perez (In re Perez), 954 F.2d 1026, 1027 (5th Cir. 1992)); see Webb v. Reserve Life Ins. Co. (In re Webb), 954 F.2d 1102, 1104 (5th Cir. 1992). Strict application of the clearly erroneous rule is necessary when, as here, the district court affirmed the bankruptcy court's findings of fact. Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.), 6 F.3d 1119, 1128 (5th Cir. 1993).

In addition, when the bankruptcy court's findings of fact are based on determinations regarding the credibility of witnesses, they should be awarded even greater deference. In re Webb, 954 F.2d at 1106; see FED. R. BANKR. P. 8013

however, because we conclude that the grounds listed below are more than sufficient to affirm.

("[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). "We will not attempt to reassess the credibility of witnesses whom we have not had the opportunity to see on the stand." Tex. Mortgage Servs. Corp. v. Guadalupe Sav. & Loan Ass'n (In re Tex. Mortgage Servs. Corp.), 761 F.2d 1068, 1078 (5th Cir. 1985).

## III.  DISCUSSION

A.    Violations of 11 U.S.C. § 727(a)(2)

The bankruptcy court shall not grant a discharge under Chapter 7 if

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition; or . . . property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A)-(B).  The bankruptcy court's determination that a debtor had the requisite intent is a factual finding, which we must review under the clear error standard.  In re Dennis, 330 F.3d at 701.  "Actual intent . . . may be inferred from the actions of the debtor and may be proven by circumstantial evidence."  Pavy v. Chastant (In re Chastant), 873 F.2d 89, 91 (5th Cir. 1989). Factors that tend to evidence actual intent to defraud include:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

Id. (quoting Fox v. Schmit (In re Schmit), 71 B.R. 587, 590 (Bankr. D. Minn. 1987)).

After reviewing the record, we conclude that the bankruptcy court did not err in denying Baum's discharge under § 727(a)(2). The evidence before the bankruptcy court indicated that Baum owned the portable arena, that Baum attempted to conceal his ownership of the arena by claiming that it belonged to Russell Johnson, that Baum asked and permitted John Curtis to remove the arena after he filed for bankruptcy, and that Baum committed these actions with the requisite fraudulent intent. Although Baum maintains that he gave the arena to Russell Johnson, the bankruptcy court found Johnson's and Curtis's testimony, which refuted Baum's story, more credible than that of Baum. As stated above, we give great deference to the bankruptcy court's findings of fact that are based on determinations regarding the credibility of witnesses. See In re Webb, 954 F.2d at 1106. Because Baum has not shown error, clear or otherwise, we will not reverse the bankruptcy court's findings and conclusions of law regarding the portable arena.

We reach the same conclusion on the damaged guardrails. There was sufficient evidence before the bankruptcy court that Baum allowed the post-petition removal of damaged guardrails with the intent to defraud his creditors or the estate. The damaged guardrails became property of the estate once the Baums filed for bankruptcy. The bankruptcy court found that Baum's failure to consult with the Trustee or any other party in interest before disposing of the guardrails evidenced Baum's intent to hinder, delay, and defraud creditors and the estate. On appeal, Baum has failed to show that these findings and conclusions were in error. Accordingly, we affirm.

B. Violations of 11 U.S.C. § 727(a)(4)

Alternatively, we conclude that there was sufficient evidence to bar Baum's discharge under § 727(a)(4). Under that section, the bankruptcy court shall not grant the debtor a discharge if "the debtor knowingly and fraudulently, or in connection with the case . . . made a false oath or account." 11 U.S.C.

§ 727(a)(4)(A). Stated differently, the debtor's discharge may be denied if the debtor makes a false oath in connection with his bankruptcy filings. Cadle Co. v. Pratt (In re Pratt), 411 F.3d 561, 566 (5th Cir. 2005). "An omission of an asset can constitute a false oath." Id.

Based on our review of the record, the bankruptcy court did not err in finding that Baum sold a diamond tennis bracelet and a .45 Colt pistol in the year before he filed for bankruptcy and did not report these transactions on his schedules or SOFA. The record evidence shows that Baum knowingly and fraudulently failed to disclose the sale of these items on his schedules or SOFA. Although Baum argues that he was not the owner of either item, the evidence indicates otherwise. Moreover, to the extent the bankruptcy court credited other witnesses' testimony over Baum's in concluding that Baum in fact owned these items, we will not disturb the bankruptcy court's credibility determinations on appeal. See In re Tex. Mortgage Servs. Corp., 761 F.2d at 1078. Accordingly, Baum's failure to disclose the sale of the bracelet and the .45 Colt handgun on his schedules and SOFA resulted in him making a false oath in violation of § 727(a)(4). Cf. In re Pratt, 411 F.3d at 566.

Because any of the grounds we have addressed here are more than sufficient to affirm the judgment, we do not find it necessary to discuss each alleged point of error raised by Baum. Consequently, we affirm.

## IV. CONCLUSION

For the reasons stated above, the judgment is AFFIRMED.