IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-10554

In the Matter Of: JOSEPH M. FRIEDHEIM and JOYCE A. FRIEDHEIM,

Debtors.

_____

THE CADLE COMPANY,

Appellant,

v.

JOSEPH M. FRIEDHEIM; JOYCE A. FRIEDHEIM,

Appellees.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-2043

_____

Before GARZA, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

The Cadle Company ("Cadle") appeals the district court's affirmance of a final order issued by the bankruptcy court denying Cadle's objections to the Debtors' discharge. Cadle, one of the Debtors' creditors, had sought to deny

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

discharge under 11 U.S.C. §§ 727(a)(2) and (a)(4), alleging that Debtors fraudulently transferred or concealed their involvement in Park Cities Realty ("PCR") and that Debtors made false disclosures in connection with their bankruptcy. Finding no reversible error, we affirm.

I.

PCR is a Texas corporation, formed in 2000, that is in the business of managing apartment complexes. The sole shareholders and directors of PCR are the Friedheims' two daughters, Andrea Hundley and Annette Friedheim. Hundley serves as the president and secretary of PCR. Joseph Friedheim has served as vice-president of PCR. Joseph Friedheim received a salary for his work at PCR and contributed to a SIMPLE IRA through PCR. Beginning in 2003, Joyce Friedheim began to work at PCR as a clerical employee; her duties included bookkeeping and answering the phones. During 2005, Joyce Friedheim terminated her employment at PCR. While employed at PCR, Joyce Friedheim was paid a salary and contributed to a SIMPLE IRA through PCR.

On May 6, 2005, the Debtors filed for Chapter 7 bankruptcy. Their schedules claimed over $300 million in unsecured debt which had arisen primarily from their personal guarantees on a failed real estate venture. As for assets, the Debtors' schedules listed their home, retirement accounts, various household goods and furnishings, and two vehicles, totaling in value $2,318,046.

On their filings, the Debtors did not claim PCR as an asset, but did make various disclosures about PCR and their involvement in the company. In the Schedules and Statements of Affairs, the Debtors stated that: (1) PCR is a scheduled business for which Joseph Friedheim is the vice-president; (2) PCR paid electric bills for the Debtors in 2003, 2004, and 2005; (3) PCR has an office on the Debtors' property and owns furniture and equipment located there; (4) Joseph Friedheim has been employed as a real estate broker for PCR for five years and has received a monthly salary; (5) Joyce Friedheim was employed as

a clerical worker for PCR for one year and during that time received a monthly salary; (6) PCR has relocated their offices from the Debtors' home and will no longer be paying electrical bills.

II.

On September 30, 2005, Cadle initiated an adversary action against Debtors seeking to deny their discharge under 11 U.S.C. § 727(a)(2) and (a)(4). Cadle owns a judgment against the Debtors in excess of $10,000,000. The discharge action alleged that Debtors were not merely employees of PCR, but actually owned PCR and utilized the appearance of ownership by their daughters to retain control and an equitable interest in the business without exposing the business's assets to Debtors' creditors. Debtors denied Cadle's allegations and asserted that PCR was owned and controlled by Hundley and Annette Friedheim.

The Discharge Action was tried by the parties before the bankruptcy court on August 9, 2006. At the trial, Joseph Friedheim, Joyce Friedheim, and Andrea Hundley testified.

In support of their argument that Debtors were the true owners of PCR, Cadle presented the following evidence to the bankruptcy court. First, Cadle presented evidence of Joseph Friedheim's extensive experience in the real estate business and of his inability to raise or borrow money on his own for a new business. Second, Cadle pointed to Hundley and Annette Friedheim's lack of experience managing apartment complexes, and Hundley's involvement in other employment and business ventures than PCR. For example, Hundley testified that she never signed any loan agreements, management contracts, employment agreements, insurance contracts or policies, or health insurance documents for PCR. Further, Cadle pointed to Hundley's testimony that she never received a salary from PCR until July 2005, immediately after the Debtors declared bankruptcy. Third, Cadle argued that it was Joseph Friedheim, not Hundley,

who performed the essential tasks necessary to carry out the day-to-day business of PCR, pointing to the fact that Joseph Friedheim signed all the checks (except his own) drawn on PCR's bank accounts, signed the lease on equipment owned by the company, and that he helped set up PCR's SIMPLE IRA program. Cadle also asserted that PCR's management contracts resulted solely from the contacts and relationships Joseph Friedheim developed through his real estate career and that it was he who negotiated the management agreements for PCR. Fourth, Cadle presented evidence that for a significant period of time, PCR was run out an apartment located above the Debtors' garage and that, allegedly in exchange for the use of the space, PCR paid for the Debtors' electrical utilities, repairs to Debtors' home, plumbing and maintenance work to Debtors' home, and Debtors' personal cell phone and internet connection. Further, PCR paid for Joseph Friedheim's car insurance and car expenses, as part of an "oral agreement" regarding the rental of the garage apartment. Finally, Cadle presented evidence that since the Debtors' employment with PCR in 2000, their primary source of income, other than social security or their IRAs, is Joseph Friedheim's employment with PCR.

In response, Debtors presented evidence that the daughters were the true owners of PCR and that Hundley makes all major business decisions. They presented evidence of Hundley's business experience, including a masters degree in business administration and over ten years employment in the banking and accounting industries. Hundley testified that it was her decision to start the company and that she approached her father about starting a business. She testified about the operations of PCR and her role within the company, stating that she makes all major business decisions for the company and supervises the company's employees, including the Debtors and 4-5 other employees. Hundley further testified that she has done all the accounting work for PCR, maintains the company's books and records, conducted due diligence on one of the two

apartment complexes PCR manages, made the decision to open the bank accounts, and made the decision to start the SIMPLE IRA plan. Hundley also explained that PCR paid rent in the form of utilities and maintenance up to $7200 per year for the use of the garage apartment, but that PCR was no longer operating out of the apartment space, and was instead operating out of her bed and breakfast. Joseph Friedheim testified that he does not own PCR, has never owned PCR, has no control over the company, and that he could not make any major business decisions without consulting with Hundley. Debtors also presented evidence that PCR never paid any personal expenses of the Friedheims, other than those expenses paid for as part of the rental agreement.

After the trial, the bankruptcy court issued its Findings of Fact and Conclusions of Law. The bankruptcy court found that Hundley is an "integral part of the business" and "makes all major business decisions." It found that Hundley testified credibly as to the reason she set up the company, how it operates, and her future plans. It also noted that although Debtors are or were employed by PCR, "there is nothing wrong or illegal for a child to set up a company and employ her parents, particularly parents the age of the debtors." The court found that Debtors adequately disclosed their relationship with PCR, did not conceal their involvement with PCR, and adequately disclosed their relationship with PCR in the Schedules and Statement of Financial Affairs. The bankruptcy court stated that Hundley, Joseph Friedheim, and Joyce Friedheim all testified credibly on behalf of the Debtors. The Court concluded that Cadle had not shown that Debtors acted with intent to defraud under § 727(a)(2), nor had they shown that Debtors offered false oaths under § 727(a)(4). Thus, the bankruptcy court entered Final Judgment denying Cadle's complaint objecting to the Debtors' discharge and ordered that the Debtors be discharged from all dischargeable debts.

III.

We review the decision of the bankruptcy court "under the same standards applied by the district court hearing the appeal from bankruptcy court; conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo." In re Nat'l Gypsum Co., 208 F.3d 498, 504 (5th Cir. 2000). "A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." Robertson v. Dennis, 330 F.3d 696, 701 (5th Cir. 2003). However, when a finding of fact is premised on an improper legal standard, or a proper one improperly applied, that finding loses the insulation of the clearly erroneous rule. Smith v. Hightower, 693 F.2d 359, 270 (5th Cir. 1982).

IV.

Under 11 U.S.C. § 727(a)(2), the bankruptcy court shall not grant a discharge under Chapter 7 if:

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition; or . . . property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A)-(B). To prove a violation, Cadle must establish the following four elements: (1) a transfer or concealment of property; (2) belonging to Debtors; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate. Cadle Co. v. Pratt, 411 F.3d 561, 565 (5th Cir. 2005). The creditor objecting to discharge bears the

burden of proof on all elements, which he may meet by a preponderance of the evidence. FED. R. BANKR. P. 4005.

Cadle argues that the bankruptcy court erred in concluding that Debtors did not violate § 727(a)(2) because Debtors' concealment of Joseph Friedheim's involvement with PCR constituted intentional conduct to shelter their assets from creditors. Cadle argues that the evidence presented at trial showed that PCR was, for all intents and purposes, Joseph Friedheim's business and that neither Hundley nor Annette Friedheim had anything to do with the operations of PCR. In response, Debtors argue that the evidence supports the bankruptcy court's conclusion PCR is owned by Hundley and Annette Friedheim, the bankruptcy court did not err.

Under the second element of § 727(a), a relevant concealment can occur only if property of the debtor is concealed. Thus, it is clear from the language of the statute that the debtor must possess some property interest in order to be barred from discharge on the grounds of a "continuing concealment." Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993). If the transfer is absolute, even if it defrauds creditors, the transfer cannot bar the discharge. In re Olivier, 819 F.2d 550, 553 n.4 (5th Cir. 1987); Thompson v. Eck, 149 F.2d 631 (2d Cir. 1945) (noting that "the bankrupt must have some legal interest in the property before he can be charged with its concealment"). Thus, the debtor must retain control of the property, or some secret or equitable interest in the property, before the court may discharge under § 727(a)(2). Olivier, 819 F.2d at 553-555.

Here, the bankruptcy court concluded that the evidence presented before it was "contrary" to the claim that Joseph Friedheim owns PCR or has an ownership interest in the company. The finding that PCR is not property of Joseph Friedheim is a factual finding that this Court reviews for clear error. After reviewing the record, we are not "left with the definite and firm conviction that a mistake has been committed," and thus must affirm the bankruptcy

court's factual finding that Joseph Friedheim had no ownership interest in PCR. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). First, the evidence in the record does not contradict the bankruptcy court's factual finding that Hundley was an integral part of the business operations and that Joseph Friedheim was merely an employee. Hundley herself testified as to her past business experience and to the role she played within the company. In addition, the Friedheims both testified that they were merely employees of the company and that Joseph Friedheim did not have any ownership interest in PCR. Second, the bankruptcy court's finding turned primarily on its assessment of the credibility of the three witness — Joseph Friedheim, Joyce Friedheim, and Andrea Hundley. Finding the testimony of all three credible, it concluded that it believed the Debtors' contention that Joseph Friedheim was not the owner of PCR. When the bankruptcy court's findings of fact are based on determinations regarding the credibility of witnesses, they should be awarded even greater deference. *Webb v. Reserve Life Ins. Co.*, 954 F.2d 1102, 1106 (5th Cir.1992); see also FED. R. BANKR. P. 8013 ("[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). This Court has previously stated that it "will not attempt to reassess the credibility of witnesses whom we have not had the opportunity to see on the stand." *In re Texas Mortg. Services Corp.*, 761 F.2d 1068, 1078 (5th Cir. 1985). Given this standard, we cannot find that the bankruptcy court committed reversible error in finding that PCR was not the Debtors' property. See *In re Espino*, 806 F.2d 1001 (11th Cir. 1986) (finding that corporation was not property of debtors and affirming the bankruptcy court's refusal to deny discharge under § 727(a)(2)).

With regard to the third element, intent, based on what it deemed the "credible testimony of the [Debtors]," the bankruptcy court found that Debtors did not, "with the intent to hinder, delay or defraud their creditors," transfer or conceal property. The bankruptcy court's determination that the debtor lacked

the requisite intent is also a factual finding which this Court reviews under the clear error standard. See, e.g., Robertson v. Dennis, 330 F.3d 696, 701 (5th Cir. 2003). Like the finding of ownership, the bankruptcy court's finding that Debtors lacked the requisite intent turned primarily on its assessment of the credibility of the testimony of the Freidheims and Hundley. As stated above, this Court ordinarily gives great deference to the bankruptcy court's findings of fact that are based on determinations regarding the credibility of witnesses. See In re Webb, 954 F.2d at 1106; Baum v. United States Trs., No. 06-10620, 2007 U.S. App. LEXIS 22791, at 11 (5th Cir. 2007) (refusing to overturn bankruptcy court's finding of intent to conceal when based on determinations regarding credibility of witnesses). Further, under the clearly erroneous standard, if the factfinder's "account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently." Anderson, 470 U.S. at 573-74. Here, after examining the record, we conclude that the bankruptcy court's conclusion that Debtors lacked the requisite intent is plausible, thus we will not reverse its factual finding that Debtors lacked the intent necessary under § 727(a)(2). See Razzaboni v. Schifano, 378 F.3d 60 (1st Cir. 2004) (failing to find fraudulent concealment where debtor dissolved a corporation and debtor's brother formed a new corporation using same equipment and location and paying salary to debtor); In re Reedy, 169 B.R. 28, 30 (Bankr. E.D. Va. 1994) (refusing to deny discharge where debtor's wife formed corporation, debtor was only employee, business was created before the filing of bankruptcy, there was no transfer of property by debtor, and wife contributed capital and services); Cullen Ctr. Bank & Tr. v. Lightfoot, 152 B.R. 141, 148 (Bankr. S.D. Tex. 1993) (refusing to deny discharge where there was no transfer of assets from debtor's business to wife's business

and wife financed company from her separate funds; retention of debtor as employee does not alter corporation's status as separate property).

Because we find no clear error in the district court's factual findings that Hundley is the true owner of PCR and that the Debtors lack any fraudulent intent, we affirm the bankruptcy court's refusal to deny discharge under § 727(a)(2).

V.

Under 11 U.S.C. § 727(a)(4), the bankruptcy court shall not grant the debtor a discharge if "the debtor knowingly and fraudulently, or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). See Cadle Co. v. Pratt, 411 F.3d 561, 566 (5th Cir. 2005). "To establish a false oath under this section, the creditor must show that (1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." Id. (alterations in original). "An omission of an asset can constitute a false oath." Id.

Cadle argues that denial of the Debtors' discharge was also appropriate under 11 U.S.C. § 727(a)(4) because Debtors failed to disclose, under oath, their ownership of PCR in their Schedules and Statements of Affairs.[1] Specifically, Cadle argues that Debtors failed to adequately disclose the Debtors' ownership in PCR. However, as discussed above, we affirm the bankruptcy court's conclusion that Debtors did not possess an ownership interest in PCR. Because Debtors did not possess an ownership interest in PCR, it is not possible for their

---

[1] In its opening brief, Cadle also argues that Debtors also failed to disclose the lease between Debtors and PCR as well as the rental income derived from this lease. But, at the start of trial, the bankruptcy court ruled that Cadle would only be permitted to enter evidence under § 727 (a)(4) "as it relates to an alleged omission of the Debtor's ownership in the realty company." Cadle does not argue that the bankruptcy court erred in limiting the scope of the hearing, therefore the alleged omissions regarding the lease and the rental income are not properly before the Court.

10

failure to disclose an ownership interest in PCR to be a false oath. Further, as the bankruptcy court found, the Debtors sufficiently disclosed the extent of their relationship with PCR in their bankruptcy filings. Therefore, we affirm the bankruptcy court's holding that none of the actions of Debtors constituted knowing and fraudulent false oaths under § 727 (a)(4).

VI.

For the reasons stated above, the judgment is AFFIRMED.